MICHAEL BAILEY
United States Attorney
District of Arizona

TODD M. ALLISON
Arizona State Bar No. 026936
DAVID A. PIMSNER
Arizona State Bar No. 007480
RACHEL C. HERNANDEZ
Arizona State Bar No. 016543
DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Todd.Allison@usdoj.gov
Email: David.Pimsner@usdoj.gov
Email: Rachel.Hernandez@usdoj.gov
Email: Dimitra.Sampson@usdoj.gov
Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of Ali Yousif Ahmed Al-Nouri a/k/a Ali Youssef Ahmed Al-Nouri, Ali Ahmed, Ali Yousif Ahmed Al Noori, Ali Yousif Ahmed Nouri, Ali Al-Daleme, Ali Yousif Ahmed Al-Mahmadi, Ali Yousif Ahmed, and Ali Yousif Nouri. | No. 20-8033MJ-MTM<br><br>**UNITED STATES' MEMORANDUM ON THE POLITICAL OFFENSE EXCEPTION IN SUPPORT OF THE UNITED STATES' REQUEST FOR DETENTION** |

The United States of America, through undersigned counsel, hereby submits a supplemental memorandum of law discussing the political offense exception to extradition and *Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986), for purposes of the Court's determination of whether special circumstances exist warranting the release of Ali Yousif Ahmed Al-Nouri's (hereafter, "Ahmed"). As the Court is aware, Ahmed raised arguments related to the political offense exception and *Quinn v. Robinson* in his Detention Memorandum (Doc. 60, at 15-18), as well as at his May 8, 2020, detention hearing to

support his argument that his purported high probability of success at the extradition hearing constitutes a special circumstance. On May 13, 2020, Ahmed filed a Supplemental Memorandum re: the "Political Offense" Exception to Extradition (Doc. 79) addressing questions the Court raised as to *Quinn v. Robinson* during the May 8, 2020 hearing. At Ahmed's continued detention hearing on May 15, 2020, the Court had additional questions and directed the United States to file a responsive memorandum.

Due to the extensive detention-related filings and arguments presented at Ahmed's detention hearings on May 8, 2020, and May 15, 2020, the United States has limited the content of this Memorandum of Law to a general summary of the current state of the political offense exception in the Ninth Circuit and the scope of *Quinn v. Robinson* as requested by the Court.[1] However, based on the law of the political offense exception as discussed herein, the facts contained in the extradition request (Doc. 3 and Exhibit B thereto), and the arguments made by the parties at the detention hearing, Ahmed has failed to carry his burden of demonstrating that he has a high probability of success based on the application of the political offense exception such that his release is warranted.

## **MEMORANDUM OF LAW**

**A. BACKGROUND ON THE POLITICAL OFFENSE EXCEPTION**

The political offense exception "prohibits the extradition of a person accused of offenses that are political in nature." *Nezirovic v. Holt*, 779 F.3d 233, 240 (4th Cir. 2015). Although the Court's role in certifying a fugitive's extradition is limited, *see Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008), the judiciary has the authority to analyze the political offense exception as part of its determination of whether the offense charged against the fugitive is within the terms of the governing treaty. *See, e.g.*, *Vo v. Benov*, 447 F.3d 1235, 1237-38 (9th Cir. 2006); *Quinn v. Robinson*, 783 F.2d 776, 787, 791 (9th Cir. 1986).

---

[1] As the Court pointed out during the May 15, 2020, detention hearing, it is likely that the parties will have to again brief the applicability of the political offense exception in the context of Ahmed's extradition hearing.

United States federal courts analyzing the political offense exception have recognized two types of political offenses: "pure" political offenses and "relative" political offenses. *See, e.g.*, *Venckiene v. United States*, 929 F.3d 843, 854 (7th Cir. 2019); *Nezirovic*, 779 F.3d at 240; *Vo*, 447 F.3d at 1240; *Quinn*, 783 F.2d at 793. "Pure" political offenses are crimes such as treason and espionage that involve "acts directed against the state but which contain none of the elements of ordinary crime." *Venckiene*, 929 F.3d at 854; *see also Vo*, 447 F.3d at 140; *Quinn*, 783 F.2d at 793. "Relative" political offenses, on the other hand, are "otherwise common crimes committed in connection with a 'political act,' or 'common crimes . . . committed for political motives or in a political context." *Quinn*, 783 F.2d at 794; *see also Vo*, 447 F.3d at 140. "United States courts have confined the exception for relative political offenses to exceptional circumstances . . . ." *Venckiene*, 929 F.3d at 857.

To determine whether a charged offense is a "relative" political offense, this Court applies the two-prong "incidence" test. *See, e.g.*, *Vo*, 447 F.3d at 1240-41; *Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc). The "incidence" test has two requirements: (1) the occurrence of an uprising or other violent political disturbance at the time of the charged offense, and (2) a charged offense that is "incidental to," "in the course of," or "in furtherance of" the uprising. *See, e.g.*, *Vo*, 447 F.3d at 1240-41; *Barapind*, 400 F.3d at 751; *Quinn*, 783 F.2d at 797.

The first prong of the test, the existence of an "uprising," requires evidence of "a revolt by indigenous people against their own government or an occupying power." *Quinn*, 783 F.2d at 807. As the Court explained in *Quinn*, such an "uprising" "cannot extend beyond the borders of the country or territory in which a group of citizens or residents is seeking to change their particular government or governmental structure." *Id.*[2] An

---

[2] The *Quinn* Court questioned whether the protections of the political offense exception should be available and whether the "incidence" test should apply to acts committed in the course of "violent conflicts between nations that transcend national boundaries." *Quinn*, 783 F.2d at 808 n.33.

"uprising" is limited to "people rising up, in their own land, against the government of that land" and "does not cover terrorism or other criminal conduct exported to other locations." *Id.* at 813-14. Moreover, violent acts committed by members of terrorist groups as part of those groups' "worldwide campaign[s] of violence" are excluded from the analysis of whether an "uprising" exists. *Id.* at 807.

The second requirement, the "incidental to" component, requires that the fugitive establish a "factual nexus between the crime and the political goal." *Barapind*, 400 F.3d at 751; *see also Quinn*, 783 F.2d at 809 ("The act must be causally or ideologically related to the uprising."); *Venckiene*, 929 F.3d at 856 (finding that the "incidental to" component requires "a direct link between the perpetrator [of the offenses], a political organization's political goals, and the specific act[s]") (quoting *Eain v. Wilkes*, 641 F.2d 504, 521 (7th Cir. 1981)); *In re Extradition of Suarez-Mason*, 694 F. Supp. 676, 707 (N.D. Cal. 1988) (offenses were not political where "there is absolutely nothing in the record which would support a finding of a rational nexus between the [offenses] and any uprising which may have been occurring").

To demonstrate the required factual nexus, the fugitive must show more than that a common crime was committed during a political uprising. *See, e.g.*, *Quinn*, 783 F.2d at 809 (holding that the "incidental to" requirement "is not satisfied by any connection, however feeble, between a common crime and a political disturbance"); *In re Extradition of Nezirovic*, No. 7:12MC39, 2013 WL 5202420, at *18 (W.D. Va. Sep. 16, 2013) (finding that "the fact [the fugitive] was in an organized military unit during a political disturbance does not mean that every act he committed is covered by the political offense exception"); *Barapind v. Amador*, No. 1:01-CV-06215 OWW, 2005 WL 2810540, at *10 (E.D. Cal. Oct. 24, 2005) (evidence simply that the offense for which extradition is sought "took place during [an] uprising is not sufficient"); *In re Extradition of Koskotas*, 127 F.R.D. 13, 21 (D. Mass. 1989) ("Moreover, isolated acts of social violence, even if politically motivated and occurring during a time of political upheaval, are not sufficient to support a claim under the political offense exception").

Additionally, the "incidental to" component requires that the fugitive show more than just that a crime had some political purpose or motivation behind it. *See, e.g.*, *Barapind*, 400 F.3d at 751 ("[A] court may not rely on a fugitive's mere assurance that a crime had some political purpose"). However, evidence of the fugitive's motivation behind a charged offense is relevant to the Court's determination because the political offense exception does not apply to acts "committed for purely personal reasons such as vengeance or vindictiveness." *Quinn*, 782 F.2d at 810.

In addition to the fugitive's motivation, factors that weigh in favor of finding that a crime may have been incidental to a political uprising include "membership in an uprising group," "similarity of the charged offense to other acts committed by the uprising group," and "the degree of control over the accused's acts by some hierarchy within the group." *Id.*

**B. THE FUGITIVE HAS THE INITIAL BURDEN OF PROOF AS TO ALL OF THE ELEMENTS OF THE POLITICAL OFFENSE EXCEPTION.**

The political offense exception is "an affirmative defense to extradition." *Vo*, 447 F.3d at 1242. As the party presenting an affirmative defense, the fugitive bears "[t]he initial burden of proof . . . to establish the essential elements of the political offense exception." *Id.* at 1242 n.7. Thus, the fugitive has the burden of demonstrating both prongs of the "incidence" test—the existence of an "uprising" and the "incidental to" nexus. *Cf. In re Extradition of Ang*, 486 F. Supp. 2d 1193, 1196, 1197 (D. Nev. 2006) (noting that the burden of proving the existence of an uprising as well as the burden of proving how the alleged criminal conduct itself was related to the uprising are both on the fugitive seeking the affirmative defense to extradition). The fugitive's burden requires, at a minimum, a preponderance of the evidence. *See Ahmad v. Wigen*, 726 F. Supp. 389, 408 (E.D.N.Y. 1989). Only after the fugitive meets his initial burden as to all of the essential elements does the burden shift to the Government to prove that the charged crime was not of a political character. *See United States v. Pitawanakwat*, 120 F. Supp. 2d 921, 928 (D. Or. 2000); *see also Ahmad*, 726 F. Supp. at 408 (noting that the burden does not shift to the

government only upon a presentation of evidence of conflict and membership in a political organization, but rather the fugitive must show the link between the crimes and the political objective) (citing *Eain v. Adams*, 529 F. Supp. 695, 694-95 (N.D. Ill. 1980)).

## C. THE POLITICAL OFFENSE EXCEPTION INVOLVES A MIXED QUESTION OF LAW AND FACT.

The Court's determination of whether an offense charged against a fugitive falls within the political offense exception is a mixed question of law and fact. *See, e.g.*, *Vo*, 447 F.3d at 1240; *Quinn*, 783 F.2d at 791. The Court's analysis requires (1) factual findings based on the evidence admitted at the extradition hearing, and (2) the application of the "incidence" test to determine whether the charged crime was in furtherance of a political uprising. *See Quinn*, 783 F.2d at 791.

Because the application of the political offense exception is based on specific facts pertaining to the evidence presented, the context of the fugitive's specific charged offenses, and the motivation behind those offenses, courts have found the analysis of the political offense exception to be "primarily a question of fact." *Nezirovic*, 779 F.3d at 240; *see also Venckiene*, 929 F.3d at 850, 854 ("In applying political offense exceptions to extradition treaties, factual details matter . . . ."); *Ordinola v. Hackman*, 478 F.3d 588 (4th Cir. 2007) (The political offense question is "a mixed question of law and fact, but mostly of fact.")

Should the fugitive seek review via a petition for a writ of habeas corpus of the magistrate judge's analysis of the political offense exception as part of the ultimate question of whether the offense charged is within the treaty, the reviewing court "must review the magistrate's purely factual findings underlying the application of the political offense exception under the clearly erroneous standard, while the mixed determinations at issue—such as the question whether the crime was incidental to a political uprising—must be reviewed *de novo*." *Quinn*, 783 F.2d at 791; *see also Barapind*, 360 F.3d at 1073; *Ordinola*, 478 F.3d at 598 (On habeas review, the magistrate judge's factual findings are given great deference, and the magistrate judge's decision is affirmed unless it is "palpably

erroneous in law.").

**D. TO CLAIM THE POLITICAL OFFENSE EXCEPTION, THE FUGITIVE IS NOT REQUIRED TO ADMIT TO THE COMMISSION OF THE OFFENSE, BUT CERTAIN ADMISSIONS MAY BE NECESSARY TO MEET THE SIGNIFICANT BURDEN.**

At Ahmed's detention hearing, the Court inquired of the parties as to whether a fugitive has to acknowledge factually that he engaged in the charged acts before taking advantage of the political offense exception. Ahmed's supplemental memorandum argued that *Quinn v. Robinson* provided that a fugitive need not "stipulate to or acknowledge commission of charged acts in order *to invoke* the political offense exception," (Doc. 79, at 3) (emphasis added). The United States agrees that *Quinn v. Robinson* does not require a fugitive to admit to the charged acts in order *to invoke* the political offense exception; however, as discussed herein, given the fugitive's difficult burden of demonstrating that a charged offense falls within the exception and the importance of specific facts to the Court's analysis, fugitives often make certain admissions related to the charged offense in order to satisfy their burden of proof.

As an initial matter, a fugitive may need to rely on evidence outside the extradition request in order to meet his burden of establishing both requirements of the political offense exception. *See, e.g.*, *Vo*, 447 F.3d at 1243 (rejecting political offense defense where fugitive failed to demonstrate "a sustained and widespread degree of violence that rises to the level of an uprising"); *Barapind*, 400 F.3d at 752 (rejecting political offense defense where fugitive "provided no evidence at all to explain the motive for [a victim's] murder"); *Ang*, 486 F. Supp. 2d at 1197 (rejecting political offense defense where fugitive failed to demonstrate both a sufficient level of violence and also "how the alleged criminal conduct itself was in furtherance of, or causally or ideologically related to, the uprising"); *In re Solis*, 402 F. Supp. 2d 1128, 1130 (C.D. Cal. 2005) (rejecting political offense defense where fugitive offered no evidence in support thereof but rather "argue[d] only that the mere killing of a political figure is sufficient to transform the crime into a political offense or one of a political character").

Generally, such evidence may take the form of a statement of the fugitive or other witnesses (lay or expert), or other evidence concerning the existence, history, location, nature, degree, and motivation of the violence involved and the fugitive's involvement therewith. *See, e.g.*, *Quinn*, 783 F.2d at 785 ("At the hearing, Quinn introduced evidence regarding activities of the [relevant insurgent groups]. Quinn did not testify at the hearing or otherwise offer any evidence of his own motivation for his alleged participation in the charged crimes."); *Pitawanakwat*, 120 F. Supp. 2d at 938 (fugitive established that his extradition was impermissibly sought for a political offense based on his admission that he was a member of the insurgent group; a declaration by a university professor on "the political nature of [the fugitive's] conduct in the context of a larger uprising of native people seeking sovereignty, protection from genocide, and recognition of jurisdictional claims"; and other evidence establishing a pattern of violence between insurgents and government).

As discussed above, to satisfy the "incidental to" prong, the fugitive has to prove "a factual nexus between the crime and the political goal." *Barapind*, 400 F.3d at 751; *see also supra* Part A. In evaluating whether the fugitive has demonstrated the requisite nexus, "extradition courts should focus not on the types of acts alleged, but rather on the motivation for those acts." *Barapind*, 400 F.3d at 750 (citing *Quinn*, 783 F.3d at 809-10). This focus on motivation serves the purpose of avoiding turning every common crime committed during an uprising into a political offense. *See In re Extradition of Artukovic*, 628 F. Supp. 1370, 1376 (C.D. Cal. 1986), *overruled on other grounds by Lopez–Smith v. Hood*, 121 F.3d 1322 (9th Cir. 1997).

While "evidence of the accused's political motivation" and "proof of membership in an uprising group" are not necessarily required to invoke the political offense exception, a fugitive needs sufficient evidence to demonstrate that the act of which he is accused was not committed for purely personal reasons, as discussed above. *Quinn*, 783 F.2d at 809-

10; *see also supra* Part A.[3] Such motivation is evaluated both subjectively and objectively, as "[t]he [political offense] exception is not designed to protect mercenaries or others acting for nonpolitical motives." *Id.* at 810; *see also, e.g.*, *Ordinola*, 478 F.3d at 600 (concluding that "a claimant whose common crime was not subjectively politically motivated cannot come within the exception regardless of whether the offense itself could be described as an objectively political one.").

Given these parameters, it is possible in some cases for fugitives to argue both that a foreign country's evidence fails to establish probable cause for the offense for which extradition is sought and also, alternatively, that the offense is political and therefore non-extraditable. For example, in *Barapind*, the Ninth Circuit entertained the fugitive's arguments both that there was insufficient probable cause to establish that he participated as an accomplice in the murder of the wife of one of his intended victims, and also that the offense was political in nature. 400 F.3d at 752.

However, to satisfy the "incidental to" prong, in some cases the fugitive may have to make certain admissions, depending on the nature of the requesting country's evidence and the fugitive's defense. For example, even though not required in every case, fugitives often admit to membership in a particular political uprising group in an attempt to meet their burden of proving a nexus between the charged offense and the uprising. *See, e.g.*, *Barapind*, No. 1:01-CV-06215-OWW, 2005 WL 2810540, at *6, *8 (although unsuccessful, fugitive offered various pieces of evidence to demonstrate that the killings were "incidental to" the Sikh uprising in India, including his membership in a militant separatist group that advocated for Sikh separatism); *Pitawanakwat*, 120 F. Supp. 2d at 932 (fugitive successfully established the political offense exception based in part on his

---

[3] The fugitive in *Quinn* was not required to offer evidence of his motivation given that, at the trial of his co-conspirators, the prosecution argued that their motive was purely political, and, furthermore, "[t]here [wa]s no evidence that [the fugitive] was involved in the conspiracy for other than political reasons." 783 F.2d at 875, 811.

- 9 -

admission that he was a member of the insurgent group that was involved in an armed confrontation with the Royal Canadian Mounted Police); *In re Extradition of Nezirovic*, 2013 WL 5202420, at *17-*18 (fugitive failed to establish that the charged offense was of a political nature, but in an effort to do so, admitted to being a member of a Croatian paramilitary group that fought against the Serbian troops in an attempt to argue that the charged offenses were incidental to the violent political uprising in Bosnia).[4]

**E.    CONCLUSION**

The United States submits that, based on the current state of the political offense exception in the Ninth Circuit and the scope of *Quinn v. Robinson* as discussed herein, Ahmed has failed to demonstrate in his filings and at his detention hearing that he has a high probability of success based on the political offense exception such that it constitutes a special circumstance warranting his release.

Respectfully submitted this 22nd day of May, 2020.

MICHAEL BAILEY
United States Attorney

*s/ Todd M. Allison*
TODD M. ALLISON
DAVID A. PIMSNER
RACHEL C. HERNANDEZ
DIMITRA H. SAMPSON
Assistant United States Attorneys

---

[4] *Cf. Quinn*, 783 F.2d at 811 (fugitive admitted membership in the Irish Republican Army, but not a more violent offshoot thereof, the Provisional Irish Republican Army, which was the specific uprising group at issue).

- 10 -

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing documents, and sent the attached document to the following CM/ECF registrant(s):

Jami Johnson
Dan Kaplan
Counsel for Ali Yousif Ahmed Al-Nouri


*s/ Todd M. Allison*
United States Attorney's Office