**EXHIBIT 5**

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER GRINIS, MICHAEL GORDON, and ANGEL SOLIZ, on behalf of themselves and those similarly situated,<br><br>              Petitioners,<br><br>      v.<br><br>STEPHEN SPAULDING, Warden of Federal Medical Center Devens, and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons, in their official capacities,<br><br>              Respondents. | Civil Action No. 1:20-cv-10738 |

## <u>DECLARATION OF PROFESSOR SETH PRINS</u>

Pursuant to 28 U.S.C. § 1746, I, Professor Seth Prins, declare as follows:

1. I am an Assistant Professor of Epidemiology and Sociomedical Sciences at Columbia University Mailman School of Public Health. My work integrates methods from epidemiology with theory from sociology and criminology to identify and explain the collateral public health consequences of mass incarceration.  A copy of my CV is attached as Exhibit 1.

2. I received my undergraduate degree in psychology from McGill University, and my Masters in Public Health and Doctorate in Epidemiology from Columbia University.

3. I have worked at the intersection of public health and the criminal legal system for over a decade. Before becoming an epidemiologist, I was a Senior Policy Analyst at the Council of State Governments Justice Center for five years. There, I worked at the local, state, and federal levels with legislators, judges, executive branch agency directors, district attorneys, public defenders, and advocates to improve collaboration between the mental health and criminal justice systems. In this capacity, I also toured a solitary confinement facility in Orlando, Florida. I also provided technical assistance to grantees and authored policy guides and position papers on behalf of the Bureau of Justice Assistance and the National Institute of Corrections.

4. My understanding is that FMC-Devens is currently requiring apparently healthy individuals, who are not exhibiting any COVID-19 symptoms to "quarantine" for two weeks in solitary

confinement in the Special Housing Unit ("SHU") or some similar setting within the facility, before they can be released.

5. I am unaware of any studies supporting solitary confinement as a disease containment strategy in jails or prisons, and based on my experience and professional knowledge, it would not effectively constrain the spread COVID-19 in a carceral setting. Unless the entire SHU was a negative pressure environment, the air-borne droplets of COVID-19 virus would be spread by air-circulation throughout the unit. The circulation of medical staff and correctional officers into and out of the unit would also transmit the virus to other parts of the facility and into the surrounding community.

6. In my professional opinion, even in the midst of the current pandemic, it is ineffective as a public health measure to hold prisoners in such inhumane conditions for two weeks before releasing them from a facility.

7. Jails and prisons in New York are releasing people without doing so. This makes sense. If the prisoner had been kept in the general population of the prison immediately prior to their release, than they should be able to be released to self-isolate in the community as well.

8. Even if a prisoner is infected and symptomatic, there are still many families that would prefer to take on the risk of having the individual self-isolate in their home rather than having their family member die in prison. They should be allowed to make this choice. Indeed, thousands of families of essential workers are grappling with this every day. There is no reason that we should apply a different standard of behavioral surveillance to a prisoner whom the Bureau of Prisons has already decided to release.

9. Finally, if a prisoner eligible for release is infected, symptomatic, and does not have a home in which they can self-isolate, the Bureau could use empty hotel rooms or dorm rooms for quarantine purposes. In other words, there are available, non-punitive options.

10. Isolation in solitary confinement is not only ineffective as a health measure, it is also inhumane.

11. Because of my professional focus on mental health in the carceral system, I am very familiar with the body of work reviewing the use of solitary confinement in jails and prisons. The literature makes clear that solitary confinement is extraordinarily punitive and can have a severe impact on prisoners in even a short period of time.

12. As Dr. Kenneth Appelbaum explains "The literature on the 'psychological, psychiatric, and sometimes physiological effects' of solitary confinement has been described as 'sizeable and

impressively sophisticated.'[1] A recent review stated that '[n]early every scientific inquiry into the effects of solitary confinement over the past 150 years has concluded that subjecting an individual to more than 10 days of involuntary segregation results in a distinct set of emotional, cognitive, social and physical pathologies.'[2],[3]

13. Based on its severe psychological and physiological impacts, solitary confinement is frequently described as akin to torture.

14. These severe impacts are true regardless of whether the individual is housed in the SHU or a different unit that similarly holds them in solitary confinement. Regardless of the name, forcing an individual to experience such extreme isolation cannot be made less punitive.

15. I have reviewed the declaration of Clinical Director Dr. Megan Shaw that was submitted in this lawsuit. She used the terms "Isolation Unit" and "Quarantined areas" to describe places where symptomatic prisoners and asymptomatic prisoners in the midst of screening, respectively, would be housed. *See, e.g.,* Shaw Decl. p. 4 & n.1. Based on the document, the conditions of these two units were not entirely clear to me.

16. As I understand the document, however, it appears that prisoners who report their symptoms may be placed in solitary confinement for isolation until they test negative for COVID-19 or are otherwise cleared by medical staff for release from isolation. *See* Shaw Decl. p. 6.

17. Such a practice would undermine efforts to contain the infection, as the punitive nature of solitary confinement will discourage people from self-reporting their symptoms.

18. Over the past decade, the movement in this country has been to decrease the use of solitary confinement due to its extraordinarily damaging impacts. To revive a practice that was otherwise being phased out in the context of a pandemic, especially where there is no reason to think that it will protect against the spread of COVID-19, is an especially punitive response. Incarcerated individuals should not have to choose between continuing to face a heightened risk of COVID-19 infection within a prison, or experiencing the trauma of two-weeks of solitary confinement before they can be released into the community.

[signature on next page]

---

[1] P.A. Smith, *The Effects of Solitary Confinement on Prison Inmates: A Brief History and Review of the Literature,* Crime & Just 34:441-528, 2006.

[2] D. H. Cloud, E. Drucker, A. Browne, et al, *Public Health and Solitary Confinement in the United States,* Am. J. Public Health, 105:18-26, 2015.

[3] Kenneth L. Appelbaum, *American Psychiatry Should Join the Call to Abolish Solitary Confinement*, The Journal of American Academy of Psychiatry and the Law 43, no. 4 (2015):10, http://jaapl.org/content/jaapl/43/4/406.full.pdf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of April 2020.

_____

Seth Prins, PhD

# Seth J. Prins

Assistant Professor of Epidemiology and Sociomedical Sciences

*Columbia University Mailman School of Public Health, 722 W 168 Street Room 521, New York, NY 10032*

✉ sjp2154@columbia.edu | ⌂ sethjprins.com | 🐦 s_j_prins

## Professional Appointments

**Assistant Professor**
Columbia University, Department of Epidemiology, Department of Sociomedical Sciences          2018-present

**Postdoctoral Research Fellow**
Columbia University, Department of Sociomedical Sciences and School of Social Work          2016-2018

## Education

**PhD in Epidemiology**
Columbia University          2011-2016
- Dissertation title: Is criminogenic risk assessment a prisoner of the proximate? Challenging the assumptions of an expanding paradigm
- Dissertation sponsor: Sharon Schwartz. Committee and readers: Bruce G. Link, Lisa M. Bates, Adam Reich, Jennifer Skeem

**MPH in Sociomedical Sciences**
Columbia University          2008-2010

**BA in Psychology**
McGill University          2000-2004

## Publications

### Peer-Reviewed Articles

1. Kajeepeta, S, CG Rutherford, KM Keyes, AM El-Sayed, and SJ Prins (2020). County Jail Incarceration Rates and County Mortality Rates in the United States, 1987–2016. *American Journal of Public Health* 110(S1), S109–S115.

2. Prins, SJ and B Story (2020). Connecting the Dots Between Mass Incarceration, Health Inequity, and Climate Change. *American Journal of Public Health* 110(S1), S35–S36.

3. Reich, A and SJ Prins (2020). The Disciplining Effect of Mass Incarceration on Labor Organization. *American Journal of Sociology* In Press.

4. Eisenberg-Guyot, J and SJ Prins (2019). Relational Social Class, Self-Rated Health, and Mortality in the United States. *International Journal of Health Services* 50(1), 7–20.

5. Hatzenbuehler, ML, C Rutherford, S McKetta, SJ Prins, and KM Keyes (2019). Structural Stigma and All-Cause Mortality among Sexual Minorities: Differences by Sexual Behavior? *Social Science & Medicine*.

6. Prins, SJ (2019). Criminogenic or Criminalized? Testing an Assumption for Expanding Criminogenic Risk Assessment. *Law and Human Behavior*.

7. Prins, SJ, S McKetta, J Platt, C Muntaner, KM Keyes, and LM Bates (2019). Mental Illness, Drinking, and the Social Division and Structure of Labor in the United States: 2003-2015. *American Journal of Industrial Medicine* 62(2), 131–144.

8. Beardslee, J, S Datta, A Byrd, M Meier, SJ Prins, M Cerda, and D Pardini (2018). An Examination of Parental and Peer Influence on Substance Use and Criminal Offending During the Transition From Adolescence to Adulthood. *Criminal Justice and Behavior* 45(6), 783–798.

9. Keyes, KM, DS Gary, J Beardslee, SJ Prins, PM O'Malley, C Rutherford, and J Schulenberg (2018). Joint Effects of Age, Period, and Cohort on Conduct Problems Among American Adolescents From 1991 Through 2015. *American Journal of Epidemiology* 187(3), 548–557.

10. McKetta, S, SJ Prins, J Platt, LM Bates, and K Keyes (2018). Social Sequencing to Determine Patterns in Health and Work-Family Trajectories for U.S. Women, 1968-2013. *SSM - Population Health* 6, 301–308.

11. Prins, SJ and A Reich (2018). Can We Avoid Reductionism in Risk Reduction? *Theoretical Criminology* 22, 258–278.

12. Hatzenbuehler, ML, SJ Prins, M Flake, M Philbin, MS Frazer, D Hagen, and J Hirsch (2017). Immigration Policies and Mental Health Morbidity among Latinos: A State-Level Analysis. *Social Science & Medicine* 174, 169–178.

13. Cerdá, M, SJ Prins, S Galea, CJ Howe, D Pardini, M Cerdá, SJ Prins, S Galea, CJ Howe, and D Pardini (2016). When Psychopathology Matters Most: Identifying Sensitive Periods When within-Person Changes in Conduct, Affective, and Anxiety Problems Are Associated with Male Adolescent Substance Use. *Addiction* 111(5), 924–35.

14. Platt, J, SJ Prins, L Bates, and K Keyes (2016). Unequal Depression for Equal Work? How the Wage Gap Explains Gendered Disparities in Mood Disorders. *Social Science & Medicine* 149(C), 1–8.

15. Schwartz, S, SJ Prins, UB Campbell, and NM Gatto (2016). Is the ``Well-Defined Intervention Assumption'' Politically Conservative? *Social Science & Medicine* 166, 254–257.

16. Muntaner, C, E Ng, H Chung, SJ Prins, H Chung, and SJ Prins (2015). Two Decades of Neo-Marxist Class Analysis and Health Inequalities: A Critical Reconstruction. *Social Theory & Health* 13(3-4), 267–287.

17. Muntaner, C, E Ng, SJ Prins, K Bones-Rocha, A Espelt, and H Chung (2015). Social Class and Mental Health: Testing Exploitation as a Relational Determinant of Depression. *International Journal of Health Services* 45(2), 265–284.

18. Prins, SJ, JL Skeem, C Mauro, and BG Link (2015). Criminogenic Factors, Psychotic Symptoms, and Incident Arrests among People with Serious Mental Illnesses under Intensive Outpatient Treatment. *Law and Human Behavior* 39(2), 177–88.

19. Sohler, N, BG Adams, DM Barnes, GH Cohen, SJ Prins, and S Schwartz (2015). Weighing the Evidence for Harm from Long-Term Treatment with Antipsychotic Medications: A Systematic Review. *American Journal of Orthopsychiatry* 86(5), 477.

20. Prins, SJ (2014). Why Determine the Prevalence of Mental Illnesses in Jails and Prisons? *Psychiatric Services* 65(8), 1074.

21. Prins, SJ (2014). Prevalence of Mental Illnesses in U.S. State Prisons: A Systematic Review. *Psychiatric Services* 65(7), 862–872.

22. Prins, SJ, FC Osher, HJ Steadman, PC Robbins, and B Case (2012). Exploring Racial Disparities in the Brief Jail Mental Health Screen. *Criminal Justice and Behavior* 39(5), 635–645.

23. Prins, SJ (2011). Does Transinstitutionalization Explain the Overrepresentation of People with Serious Mental Illnesses in the Criminal Justice System? *Community Mental Health Journal* 47(6), 716–722.

## Chapter

1. Prins, SJ, JE Elliott, JL Meyers, R Verheul, and DS Hasin (2014). ``Substance Use Disorders''. In: *The American Psychiatric Publishing Textbook of Personality Disorders*. Ed. by JM Oldham, AE Skodol, and DS Bender. Washington, DC: American Psychiatric Publishing, pp.407–428.

## Federal Reports

1. Fabelo, T, G Nagy, and SJ Prins (2011). *A Ten-Step Guide to Transforming Probation Departments to Reduce Recidivism*. Tech. rep. New York: Council of State Governments Justice Center.

2. Prins, SJ and L Draper (2009). *Improving Outcomes for People with Mental Illnesses Under Community Corrections Supervision: A Guide to Research-Informed Policy and Practice*. Tech. rep. New York: Council of State Governments Justice Center.

3. Prins, SJ and FC Osher (2009). *Improving Responses to People with Mental Illnesses: The Essential Elements of Specialized Probation Initiatives*. Tech. rep. New York: Council of State Governments Justice Center.

## Under Review

1. Prins, SJ (2020). ``Individual Risks or Population Risks: Do Criminogenic Risk Factors Explain Group Differences in Arrest and Conviction Rates?'' Under Review.

2. Prins, SJ, S McKetta, J Platt, C Muntaner, KM Keyes, and LM Bates (2020). ``"The Serpent of Their Agonies": Exploitation As Structural Determinant of Mental Illness''. Under Review.

3. Prins, SJ and A Reich (2020). ``Criminogenic Risk Assessment: A Meta-Review and Critical Analysis''. Under Review.

4. Prins, SJ, Sandhya Kajeepeta, RF Pearce, J Beardslee, DA Pardini, and M Cerdá (2020). ``Identifying Sensitive Periods When Changes in Parenting and Peer Factors Are Associated with Changes in Adolescent Alcohol and Marijuana Use''. Under Review.

5. Seth J. Prins and Sharon Schwartz (2020). ``Toward a Dialectical Social Epidemiology''. Under Review.

## Popular Press

1. Brett Story and Seth J. Prins (Aug. 28, 2019). A Green New Deal for Decarceration. *Jacobin*.

2. Prins, SJ, A Tergas, and S Goldberg (Oct. 16, 2019). Opinion | A Bad Post-Rikers Jail Plan for New York. *The New York Times. Opinion*.

# Fellowships

**HIV, Substance Use, and Criminal Justice T32 Fellowship Program**
National Institute on Drug Abuse grant T32-DA-37801, Nabila El-Bassel and Lisa Metsch, Principal Investigators
2016-2018

**Psychiatric Epidemiology Training Program Predoctoral Fellow**
National Institute of Mental Health grant 5-T32-MH-13043, Bruce G. Link, Principal Investigator
2011-2016

# Invited Talks

**Criminogenic or criminalized? Gendering, racialization, and the assumptions of criminogenic risk assessment**
Seminar Series in Gender, Sexuality, and Health, Department of Sociomedical Sciences, Columbia University
December 6
2017

**How an epidemiologist encountered critical realism, and what critical realism might gain from debates about causal inference in epidemiology**
Beyond Positivism: Theory, Methods, and Values in Social Science Conference. Quantitative Methods Plenary Panel, Montreal, QC
August 8-10
2017

**Moving beyond socioeconomic status to social class processes in public health**
Region 2 Public Health Training Center Webinar
August 1
2017

Health Disparities and the Criminal Justice System                                          October 21
Icahn School of Medicine at Mount Sinai                                                      2016

## Conference Presentations

'The serpent of their agonies': Exploitation as structural determinant of          June 18 - 21
mental illness
Society for Epidemiologic Research, Minneapolis, MN                                          2019

Changes in county jail incarceration rates are associated with changes in          June 18-21
county mortality rates in the United States from 1987-2016
Society for Epidemiologic Research, Minneapolis, MN (Poster)                                 2019

Relational Social Class, Self-Rated Health, and Mortality in the United States     June 18-21
Society for Epidemiologic Research, Minneapolis, MN (Poster)                                 2019

Contemporary Class Relations as Structural Determinant of Mental Illness:          June 21-23
Moving Beyond Stratification to Relational Social Processes
Society for Epidemiologic Research, Seattle, WA (Poster)                                      2017

Testing Contemporary Class Relations as a Structural Determinant of                April 27-29
Mental Illness: Moving Beyond Stratification to Relational Social Processes
Population Association of America, Chicago, IL                                                2017

Substance use over the lifecourse: When do peers and parents matter                June 21-24
most?
Society for Epidemiologic Research, Epidemiology Congress of the Americas, Miami, Florida     2016

## Awards and Recognition

'Anxious? Depressed? You might be suffering from capitalism', one of the top 10 articles
mentioned across Sociology of Health & Illness's news and social media streams              2016

The William Farr Award in Epidemiology, Department of Epidemiology, Columbia University      2016

## Research Positions

Collaborator, Trajectories of Substance Use and Comorbid Mental Illness, Magdalena
Cerda, Principal Investigator, National Institute on Drug Abuse grant 5K01DA030449-05        2013 - 2015

Associate Researcher, University of Wisconsin School of Medicine and Public Health,
County Health Rankings Project, Robert Wood Johnson Foundation. Bridget Catlin, PhD,         2010-2011
MHSA, Co-Director

Senior Policy Analyst, Council of State Governments Justice Center, Criminal
Justice/Mental Health Consensus Project                                                      2005-2010

# Teaching Positions

## Instructor

| | |
|---|---|
| Applications of Epidemiologic Research Methods II P9489, Columbia University Department of Epidemiology, second-year doctoral course | Spring 2019, 2020 |
| Epidemiology, Bard Prison Initiative, Bard College, Woodbourne Correctional Facility | Fall 2015 |

## Teaching Assistant

| | |
|---|---|
| Publications, Presentations, and Grants, Columbia University, Department of Epidemiology, first-year doctoral course | 2015 |
| Psychiatric Epidemiology Reading Seminar, Columbia University Mailman School of Public Health | 2014 |
| Principals of Observational Epidemiology, Columbia University Mailman School of Public Health | 2013, 2014 |
| Principals of Epidemiology and Introduction to Biostatistical Methods, Columbia Summer Research Institute | 2012, 2013 |
| Social Epidemiology, Columbia University Mailman School of Public Health | 2012, 2013 |
| Masters Thesis I and II, Columbia University Mailman School of Public Health | 2012, 2013 |
| Epidemiology of Drug and Alcohol Problems, Columbia University Mailman School of Public Health | 2012 |

# Service to Profession

## Peer Reviewer

Addiction Research & Theory
American Journal of Epidemiology
American Journal of Industrial Medicine
American Journal of Public Health
American Journal of Orthopsychiatry
BMC Psychiatry
Canadian Journal of Psychiatry
Criminal Behavior and Mental Health
Drug and Alcohol Dependence
Family Medicine and Community Health
International Journal of Health Services
Journal of Epidemiology & Community Health
JAMA Psychiatry
Journal of Occupational and Environmental Medicine
Psychiatry, Psychology, and Law
Occupational and Environmental Medicine
Social Psychiatry and Psychiatric Epidemiology
Social Science & Medicine
Society and Mental Health
Sociology of Health & Illness

Affiliations

      American Psychopathological Association
      American Public Health Association
      American Sociological Association
      Society for Epidemiologic Research

# Service to Department

| | |
|---|---|
| PhD Dissertation Committee, Emilie Bruzelius | 2020 |
| PhD Dissertation Committee, Sarah McKetta | 2020 |
| DrPh Dissertation Project, Trena Mukherjee | 2020 |
| PhD Dissertation Committee (Defended), Caroline Bancroft, Do alternatives to incarceration mitigate the health effects of criminal justice involvement? An examination of the effects of probation on chronic disease risk and access to care | Fall 2019 |
| DrPH Qualifying Exam Committee, Trena Mukherjee | Fall 2019 |
| Methods Exam Committee | 2019-2020 |
| Masters Academic Advisor, Alicia Singham-Goodwin, Chloe Young, Isabella Hill | 2019-2021 |
| Co-designer and co-facilitator, Power, Privilege, and Allyship training for faculty and teaching assistants on identifying and responding to microag- gressions in the classroom | 2015 |
| Facilitator, required journal club for masters student certificate in social determinants of health | 2012-2015 |
| Founding member, Columbia University Association for Public Health Action in Criminal Justice (now the Columbia University Association for Justice and Health) | 2011-2013 |

# Research Support

National Institute on Drug Abuse K01DA045955
Adolescent substance use as determinant and consequence of the school-to-prison pipeline: Disentangling individual risk, social determinants, and group disparities
- Total direct costs: $862,573

Role: Principal Investigator
Project period: 02/01/2019 - 01/31/2024

National Institute on Minority Health and Health Disparities L60MD013029
Racial and LGBTQ disparities in the role of substance use as determinant and consequence of the school-to-prison pipeline: Disentangling individual risk and social determinants

Role: Principal Investigator
Project Period 7/1/2018 - 6/30/2020

# Selected Media Coverage

1. Bellstrom, K (Jan. 2016). Depressed? Anxious? Blame the Gender Pay Gap. *Fortune*.

2. McGregor, J (Jan. 2016). The Gender Wage Gap Isn't Just Unfair. It Also Ups the Odds Women Get Anxiety or Depression. *The Washington Post*.

3. Reuters (Jan. 2016). Depression and Anxiety in Women Linked to Male-Female Pay Gap. *The Guardian*.

4. Cha, AE (Aug. 2015). The Perilous Plight of Middle Managers. *The Washington Post*.

5. Dahl, M (Sept. 2015). Middle Management: The Worst of Both Worlds. *New York Magazine*.

6. Lam, B (Aug. 2015). The Secret Suffering of the Middle Manager. *The Atlantic*.