# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of Ali Yousif Ahmed Al-Nouri a/k/a Ali Youssef Ahmed Al-Nouri, Ali Ahmed, Ali Yousif Ahmed Al Noori, Ali Yousif Ahmed Nouri, Ali Al-Daleme, Ali Yousif Ahmed Al-Mahmadi, Ali Yousif Ahmed, and Ali Yousif Nouri. | No. 20-MJ-08033-PHX-MTM<br><br>**ORDER** |

This matter is before the Court upon the government's request for Ahmed's[1] detention pending an extradition hearing. (Doc. 48). The government filed a Complaint pursuant to 18 U.S.C. § 3184 ("Complaint") upon the extradition request of the Government of Iraq. (Doc. 3). Ahmed filed a Detention Memorandum (Doc. 60), and a Supplement to Detention Memorandum (Doc. 74). The government responded to the Supplement (Doc. 81). In addition to oral argument on detention (Doc. 72, 86), the parties filed further Supplemental Memoranda regarding the "Political Offense" Exception to Extradition (Doc. 79, 89, 94) and Supplemental Memoranda regarding factual issues relating to COVID-19. (Doc. 90, 91).

As set forth below, the Court grants the government's motion and orders that Ahmed be detained until the conclusion of his extradition proceeding.

//

//

---

[1] The Court will adopt the practice of both parties in referring to Mr. Ali Yousif Ahmed Al-Nouri as "Ahmed."

**I.      Release During Extradition Proceedings.**

      **A.      Principles of Law.**

The federal extradition statute does not provide explicit authority to grant bail to a potential extraditee. *See* 18 U.S.C. § 3184. In contrast to a federal criminal case, the Bail Reform Act, 18 U.S.C. §§ 3141—3156, does not apply. *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984).

Where the requesting foreign government has complied with a valid extradition treaty, the United States is obligated to surrender the fugitive, "an obligation which it might be impossible to fulfill if release on bail were permitted." *Wright v. Henkel*, 190 U.S. 40, 62 (1903). "[T]here is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903)). *See also Matter of Requested Extradition of Kirby*, 106 F.3d 855, 858 (9th Cir. 1996). To obtain bail, a fugitive bears the burden of showing special circumstances; if special circumstances are shown, then the fugitive must also demonstrate that the fugitive is not a flight risk or danger to the community. *Matter of Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1069 (C.D. Cal. 2017).

      **B.      Special Circumstances.**

Ahmed argues that special circumstances merit his release pending an extradition hearing. (Doc. 60 at 10-18). Currently, Ahmed is detained at CoreCivic.

            1.      <u>COVID-19.</u>

Ahmed asserts that COVID-19 poses a grave threat to his health, based on his medical history of "chronic pneumonia, a serious heart condition, and high blood pressure." *Id*. at 12-13. The parties agree that CoreCivic has identified Ahmed as "high risk;" the government asserts the risk is due to a heart valve replacement while Ahmed asserts that his risk is multi-faceted. (RT 5/8/20 at 31-32). Ahmed cites to *Matter of Extradition of Toledo Manrique*, 2020 WL 13071109, *1 (N.D. Cal. Mar. 19, 2020) where the Court found that COVID-19 was a special circumstance warranting bail for a 74 year-old fugitive. The government argues that *Manrique* is an "outlier" case and that the instant case is

1 | dissimilar because 1) Ahmed faces charges of having murdered two police officers, far more serious charges than the money laundering charges against Manrique, and 2) Ahmed is 42 years old rather than Manrique's age of 74.  (Doc. 81 at 2).

Based on Ahmed's specific conditions of detention at CoreCivic, the Court finds that COVID-19 does not present a special circumstance. Ahmed is housed in Administrative Segregation. The government has provided an affidavit from Assistant Warden Hickson of CoreCivic setting forth the specific conditions of Ahmed's detention. (Doc. 90-2, Ex. 2).  Specifically, Assistant Warden Hickson's affidavit states that 1) Ahmed has his own cell, where he spends 23 hours a day, and he is "physically separated from all other inmates at all times;" 2) Ahmed is "not in close physical proximity with other inmates" even if he "may be able to communicate with other inmates from a distance; 3) Ahmed has not had any contact with any infected staff members at CoreCivic; and 4) Ahmed's cell has a "solid door with a food port and a window." *Id*.

Though Ahmed has been designated "high risk," the Court finds that the conditions of his detention have been designed to minimize as greatly as possible the risk of Ahmed contracting COVID-19.  Under the circumstances, the Court finds that COVID-19 does not present a special circumstance in Ahmed's case. *See Valentino v. U.S. Marshal*, 2020 WL 1950765, at *2 (S.D. Tex. Apr. 15, 2020)(lack of evidence of immediate danger to defendant supports finding that Covid-19 is not a special circumstance).  Further, in the absence of "specific identified risk" to Ahmed, the fact of general risk of COVID-19 to all individuals in detention weighs against a finding of special circumstances.  As the Court stated in *Valentino*, "special circumstances must be extraordinary and may not rely on factors applicable to all defendants facing extradition." *Id*. (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992). *See also In the Matter of the Extradition of Carr*, 2020 WL 4816052, at *5 (N.D. Ill. August 18, 2020)(collecting cases)(noting Court findings that "generalized assertions of the risk of contracting COVID-19 in jail are insufficient to constitute 'special circumstances'").

//

### 2. Anticipated Length of Proceedings.

Ahmed argues as a special circumstance that the Government of Iraq unduly delayed charging Ahmed, and that the defense investigation of the charged acts will be lengthy and complex, including requiring travel to Iraq. (Doc. 60 at 14-15). Ahmed cites to *Wroclawski v. United States*, 634 F. Supp. 2d 1003 (D. Ariz. 2009). In *Wroclawski*, the defendant was charged in Poland in 1994 with bank fraud and theft; the Polish government did not seek his extradition until 12 years later, in 2006. *Id*. at 1008. Noting that the Government had no explanation for the lengthy delay between the charging of Wroclawski and the request for his extradition, the district court found the delay constituted a special circumstance. *Id*.

The Court finds that delay in the present case is not a special circumstance. In contrast to *Wroclawski*, there is no significant gap of time between Ahmed being charged by the Government of Iraq and its request for Ahmed to be extradited. The Government of Iraq issued a warrant for Ahmed's arrest on May 12, 2019 (Doc. 3, Ex. A at 48); five months later, on October 17, 2019, the Government of Iraq requested Ahmed's extradition. (*Id*., Ex. A at 1). The Court recognizes that the two charges of murder against Ahmed date back to 2006. (Doc. 3 at 2.) However, there is a significant difference between the delay recognized as a special circumstance in *Wroclawski*—a <u>charged case</u> that languished for 12 years before a request for extradition—and the present case, where a lengthy investigation resulted in charges and a subsequent expeditious (within five months) request for extradition. Where a foreign government has been actively investigating a case over a period of years, and subsequently brings charges and requests extradition, a lengthy investigation is not a delay warranting a finding of a special circumstance. *See In the Matter of the Extradition of Drumm*, 150 F. Supp. 3d 92, 99 (D. Mass. 2015)(rejecting delay as a special circumstance where crime had been actively investigated, as interval of time between alleged conduct and extradition request did not reflect a lack of urgency by requesting government).

In urging the Court not to find a special circumstance, the government notes that "a significant witness came forward in March 2019 and identified Ahmed from recent social

media photographs." (Tr., 5/15/20 at 79). The government also references several other witnesses who provided information in January and February 2019 relating to the investigation. (*Id.* at 79-80). Further, the government notes that Ahmed left Iraq for Syria in approximately 2007 and was approved for admission to the United States in 2009. (Doc. 48 at 2). The government also notes that Ahmed was imprisoned in Syria in 2009 but is uncertain of Ahmed's activities in Syria. (Tr., 5/15/20 at 103-4). In similar circumstances, where alleged criminal conduct occurred years before the bringing of charges and request for extradition, the Court in *Drumm* found as relevant that the "delay in charging" may have attributable the fugitive's decision to relocate to the United States. See *In the Matter of the Extradition of Drumm*, 150 F. Supp. 3d at 99. Ahmed's travel to Syria between 2007-2009, and his entry into the United States in 2009, as well as the evidence the Government of Iraq maintained an active investigation of the charged murders, further supports this Court's conclusion that the asserted delay in this case does not present a special circumstance.

The Court also finds that Ahmed's assertion that extradition proceedings may be lengthy does not present a special circumstance. This Court's role at an extradition hearing is to consider:

> whether the crime of which the person is accused is extraditable, that is, whether it falls within the terms of the extradition treaty between the United States and the requesting state, and second, whether there is probable cause to believe the person committed the crime charged.

*Santos v. Thomas*, 830 F.3d 897, 991 (9th Cir. 2016)(en banc). The extradition court's role is to determine "whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Id.* at 992 (quoting *Collins v. Loisel*, 259 U.S. 309, 316-7 (1922)). Given the limited nature of extradition proceedings, an individual contesting extradition:

> may not, for example, present alibi evidence, facts contradicting the government's proof, or evidence of defense like insanity, as this tends to call into question the credibility of the government's offer of proof. However, the accused may testify to 'things which might have explained ambiguities or doubtful elements' in the government's case. But he may not impeach government witnesses or produce witnesses whose testimony contradicts

evidence already offered by the government.

*Id.* at 993. (internal citations omitted)(quoting *Collins*, 259 U.S. at 315-16). Accordingly, the difficulty of a defense investigation and hypothetical extended delay do not at this point qualify as a special circumstance. *See Carr*, 2020 WL 4816052, at *7 (declining to find special circumstance based on hypothetical delay in proceedings).

### 3. <u>Probability of Success and Political Offense Exception.</u>

Ahmed asserts as a special circumstance that he is likely to prevail in challenging his extradition and notes his intent to raise the political offense exception to extradition as discussed in *Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986). (Doc. 60 at 15-18). Ahmed acknowledges, however, that at this stage he has not brought forward defenses showing a likelihood of success, as the detention stage is "not the appropriate forum to relate all defenses to the petition." (*Id*. at 15). Accordingly, on the record before it, the Court does not find that Ahmed's assertion of a likelihood of success qualifies as a special circumstance.

Similarly, the Court at this point declines to find that the Ahmed's intent to raise the political offense exception qualifies as a special circumstance. As the *Quinn* Court noted, analysis of the political offense exception is a mixed question of law and fact. *Quinn*, 783 F.2d at 791. *See also Nezirovic v. Holt*, 779 F.3d 233, 240 (4th Cir. 2015)(analysis of the political offense exception is "primarily" a question of fact.) A fugitive, here Ahmed, has "the burden of showing a factual nexus between the crime and the political goal." *Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005)(en banc). At this stage, Ahmed has not met his burden; rather, he has stated his intention to do so in the future. (Doc. 60 at 16). Accordingly, although at the extradition hearing the political offense doctrine may bear upon whether Ahmed is ultimately determined to be extraditable, on the record as currently developed it is not relevant to the detention issue. *See Barapind*, 400 F.3d at 752 (declining to find charged offense as a political offense in the absence of any evidence regarding motive for murder).

//

                    4.       <u>Work on Behalf of the United States Military.</u>

Ahmed references as a special circumstance that he participated in 2016 as a role player and cultural advisor for a unit training exercise with the United States Marine Corps. (Doc. 60, Ex 5). In *Wroclawski*, the district court found that Wroclawski's work with the armed forces and law-enforcement qualified as a special circumstance, where in training individuals in hand to hand combat Wroclawski's expertise was "unique" and "undisputed," as evidenced by three separate affidavits presenting "compelling testimony that [Petitioner] …offer[ed] specific and unequaled assistance" to the military and law enforcement. 634 F. Supp. 2d at 1007. The Court finds that Ahmed's commendable participation as a role player and cultural advisor for a unit training exercise does not rise to the same level as the assistance provided in *Wroclawski*, and does not qualify as a special circumstance, because Ahmed's work did not rely on unique skills and was not nearly as extensive as the work described in *Wroclawski*.

**II.     Fifth Amendment and Basis for Detention.**

Ahmed asserts that his liberty interest as protected by the Due Process Clause of the Fifth Amendment supports his release on bail, and cites *Parretti v. United States*, 122 F.3d 758 (9th Cir. 1997), *withdrawn*, 143 F.3d 508 (9th Cir. 1998)(en banc) in support of his argument. (Doc. 60 at 5). Because *Parretti* was withdrawn it is not the law of this circuit, and no other circuit authority has adopted its analysis. Accordingly, the Court follows *Salerno* and other circuit authority in determining that Ahmed should be detained pending an extradition hearing.

The charges in the Complaint against Ahmed are serious: he faces two counts of murder if extradited to Iraq. (Doc. 3 at 2). Those charges are punishable in Iraq by life in prison or death. (Doc. 3, Ex. A at 21.) Ahmed has thirteen brothers and sisters, all of whom reside outside of the United States in Ukraine, Austria, Turkey, or Iraq. As recently as 2017, Ahmed travelled to Turkey to visit family, and he has travelled to Mexico as well. (Doc. 14 at 2).

//

1    Ahmed notes that since approximately October 2017 he has been aware of some
2    level of law enforcement interest in him, as he participated in numerous interviews with
3    law enforcement. (Doc. 60 at 7). The government responds that Ahmed's general
4    awareness of law enforcement's interest in him since 2017 does not support a determination
5    that Ahmed would not flee if released pending an extradition hearing, as the filing of
6    murder charges by the Government of Iraq in 2019 has materially changed the
7    circumstances that Ahmed faces. (Tr. 5/15/20 at 105-08).

8    The Court finds that the seriousness of the charges against Ahmed, the potential
9    sentence Ahmed faces if convicted of the charges in the Complaint, and his past travel
10   history and ties to foreign countries through active family affiliation, all support a finding
11   that Ahmed should be detained pending an extradition hearing. *See In re Extradition of*
12   *Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fla. 2017)(seriousness of offense,
13   length of potential sentence, and foreign connections all factors supporting detention
14   pending extradition hearing). As noted, the Court does not find that any special
15   circumstances exist. The Court also finds that no circumstances presented have rebutted
16   the presumption against bail in extradition cases, *see Salerno*, 878 F.2d at 317, and that
17   Ahmed does present a flight risk and a danger to the community based on the seriousness
18   of the charges against him, the potential sentence he faces, and his ties to foreign countries.
19   Accordingly,
20   **IT IS ORDERED** granting the government's Motion (Doc. 48) and ordering
21   Ahmed's detention during extradition proceedings.
22   Dated this 21st day of September, 2020.

*[signature]*
Honorable Michael T. Morrissey
United States Magistrate Judge