JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

JAMI JOHNSON
New York State Bar # 4823373
DANIEL L. KAPLAN, #021158
Asst. Federal Public Defenders
jami_johnson@fd.org
dan_kaplan@fd.org

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of the Extradition of Ali Yousif Ahmed Al Nouri, Defendant. | Case No. MJ-20-08033-PHX-MTM **DEFENSE NOTICE OF EXPERT WITNESS** |

Defendant Ali Yousif Ahmed Al-Nouri ("Mr. Ahmed"), through undersigned counsel, gives notice that he intends to rely on expert opinion in connection with his upcoming extradition hearing.

Mr. Ahmed intends to rely on expert evidence from Professor Haider Ala Hamoudi. Professor Hamoudi is a Professor of Law at the University of Pittsburgh School of Law. He has a B.S. from the Massachusetts Institute of Technology and a JD from Columbia Law School. Professor Hamoudi is an expert in Middle Eastern and Islamic Law, with a particular specialization in the laws and government of Iraq. He is Editor in Chief of the *Arab Law Quarterly* and author of, among other publications, *Negotiating in Civil Conflict: Imperfect Bargaining and*

*Constitutional Construction in Iraq* (U. of Chicago Press 2013), which analyzes the creation of Iraq's first constitution in 2005 in light of the ethnic and sectarian conflict taking place in that country during that time. In 2009, Professor Hamoudi served as advisor to the Iraqi legislature on behalf of the United States Embassy in Baghdad. In this capacity he advised the legislature on amendments to the Iraqi Constitution with regards to national reconciliation. Professor Hamoudi's research focuses on, among other topics, the interaction of various forms of legal order in Iraq, including tribal law, Islamic law, and state law, and how these forms of legal order operate in practice within the political structure of that country. A copy of his cv is attached hereto as Exhibit 1.

Professor Hamoudi intends to opine that there exist numerous procedural defects in the extradition request. Specifically, he intends to opine as a matter of Iraqi law that the record does not reflect that Mr. Ahmed has been either (i) charged with or convicted of (ii) a crime specified in the Extradition Treaty, as required by Article 2 of the Extradition Treaty, because there is no conviction, and no charge, and instead merely an investigative arrest warrant of the same basic type as would be issued to a witness who failed to appear. He further intends to opine that the jurisdictional transfers among the Iraqi courts occurred in violation of Iraqi criminal process and the Iraqi Criminal Procedure Code because they lack documentation of authorization from relevant Iraqi judicial or executive authorities. He will also opine that the apparent desire of Iraqi authorities to eventually charge Mr. Ahmed with an offense that carries the default penalty of death would constitute a retroactive application of law that violates both the Iraqi constitution and international human rights law, because the provisions of the Iraqi Criminal Procedure Code that established a procedure for putting an individual to death had been suspended in 2004 by the Coalition Provisional Authority and were

not reinstated in pertinent part until 2007. He will also explain that the Iraqi Constitution does not permit extradition of its citizens to the United States.

Second, Professor Hamoudi intends to opine that assuming *arguendo* that the alleged killings took place in the manner described in the complaint, they are "crimes of a political character" as defined in Article III of the Extradition Treaty because they are best understood as acts of a domestic insurgency popular among certain important sectors of the population. The insurgency's goals were distinctly political and its violent tactics were designed to achieve those political goals. In particular during the time period relevant to these accusations, careful, meticulous assassinations of police officers were characteristic of the then-existing domestic insurgency that sought to destabilize the domestic political regime, which it viewed as illegitimate, in order to demonstrate to the Iraqi people that the then-new political order could not protect them.

Third, Professor Hamoudi will provide evidence regarding the structure of the Iraqi criminal system and the defects of justice that occur Iraqi criminal courts. These defects include relegating the rights to a fair trial and due process to the discretion of the court and failing to provide a guaranteed right of cross-examination or of confrontation. Professor Hamoudi will also describe the practical conditions in Iraqi courts. He will explain that present day Iraqi courts routinely employ methods of obtaining evidence that would violate American standards of due process, including but not limited to relying on evidence obtained by torture. He will opine that these defects of justice are especially acute in courts specialized in adjudicating alleged terrorist offenses. Professor Hamoudi will opine that as a result of these procedural defects, it is very likely that if Mr. Ahmed is returned to Iraq he will be convicted of any offenses with which he is ultimately charged no matter how flimsy or specious the evidence against him. He will also opine that it

is further likely that Mr. Ahmed will be subject to procedures designed to elicit a coerced confession and generally denied due process and justice.

Respectfully submitted: January 18, 2021

JON M. SANDS
Federal Public Defender

*s/Jami Johnson*
JAMI JOHNSON
DANIEL L. KAPLAN
Asst. Federal Public Defender