**EXHIBIT  3**

NEWS DESK

# THE EVIDENCE THAT COULD
# SAVE OMAR AMEEN'S LIFE

**By Ben Taub**

January 27, 2020



*For the past eight months, the government has failed to disclose crucial information in the extradition proceedings of Omar Ameen.*  Photograph by Mark Mahaney for The New Yorker

Last week, I wrote about the extradition case for Omar Ameen, an Iraqi refugee whom the United States government has accused of being an ISIS commander. Ameen has spent the past seventeen months in the Sacramento County Jail while his lawyers have sought to "obliterate" the claim that he killed someone in rural Iraq, by proving that he was in Turkey at the time of the murder. The evidence is overwhelmingly in their favor. The only person who claims to have seen Ameen carry out the murder is a mentally ill young man, who has never met Ameen and is seemingly being manipulated by an Iraqi F.B.I. informant with a decades-old tribal grudge against Ameen's family. The informant has expressed a desire to execute Ameen personally. Meanwhile, numerous witnesses, including the victim's widow and parents, have provided sworn statements supporting Ameen, and every scrap of digital and documentary evidence that the defense team has unearthed points to his innocence.

But there is one key piece of evidence that the defense team has never been able to obtain: Ameen's Turkish cell-phone records, which could establish his location on the day of the crime. Ameen was not an avid Internet user. Although a subpoena to Facebook revealed that Ameen had liked a lewd joke on the day of the murder—during a period when there was no Internet service in the Iraqi province where the killing took place—the company had not stored his location data. But Ameen routinely called friends in Turkey and Iraq, and, in a sworn statement, one of Ameen's brothers, Hudhayfah, said that he spoke with Ameen on his Turkish number several times during the week of the murder.

During the fall of 2018, Ameen's federal defenders, Ben Galloway and Rachelle Barbour, learned that Turkcell had retained records for Ameen's phone. But Turkcell refused to share the data directly with an American legal team. So Ameen's lawyers undertook a complicated legal process to draft, translate, certify, and file to Turkey's justice ministry a formal request for judicial assistance, called a letter rogatory. The letter—which requested Ameen's calls, texts, data, and location information—was transmitted through the court in Sacramento, and sent on February 21, 2019.

Nine months later, I attended Ameen's extradition hearing, at the federal courthouse in Sacramento. Galloway and Barbour had gathered an incredible volume of evidence demonstrating Ameen's innocence, and had managed to account for his location shortly before and after the murder, rendering his participation a logistical impossibility. But, without the cell-phone records, they could not prove his exact location on the day of the crime. Owing to the unique rules of extradition proceedings—which are designed to defer all disputes over evidence and witness credibility to the criminal trial overseas—any evidence that "contradicts" but does not "obliterate" the contents of the extradition packet is typically considered inadmissible. "None of the evidence that the defense has amassed in the approximately fifteen months of investigation is reasonably clear-cut or obliterating of probable cause," Audrey Hemesath, the lead prosecutor, told the magistrate judge, Edmund Brennan. "I would submit it's not even close."

"We've tried to get Mr. Ameen's records, as the court knows," Barbour said at the hearing. "I think I just have to give up on the Turkish government on this one."

In fact, the Turkish government is willing to provide the records—but, for the past eight months, the Department of Justice has not shared this fact with either Brennan or the defense. Three days after my piece was published, an attorney at the State Department forwarded to Galloway a letter from Gökhan Erdoğan, a department head in Turkey's justice ministry, offering to provide Ameen's cell-phone records. The only problem, Erdoğan wrote, was that the request had to be submitted by the D.O.J. itself—not by the court or the defense. Sent through proper channels, he continued, "the request will be able to be honored."

The letter is dated May 17, 2019. It was sent to the D.O.J.'s Office of International Affairs. It was logged by an employee there and never disclosed to the Court or the defense—not even by an O.I.A. attorney who knew about it before travelling from Washington, D.C., to Sacramento to participate in Ameen's extradition hearings. (Prosecutors say they "remained unaware of the contents of the Turkish letter," and knew only that it had arrived.) "Handwritten notations on the document indicate that it was routed through several people," Barbour wrote, in a court filing on Friday. "Somehow it wound up with a State Department attorney who sent it to the Defense yesterday. Surely DOJ has more information about this, but there really is nothing it can say to get back the months that have been wasted while Mr. Ameen is fighting for his life."

Last spring, as Barbour and Galloway began to realize that the Iraqi extradition packet contains forgeries, inconsistencies, and lies, they filed a motion to compel the government to disclose details from the F.B.I. investigation in Iraq. "This is not the usual extradition case," Barbour wrote. "The U.S. Government appears to have elected to launder its evidence" through the Iraqi justice

system, "to avoid having to bring charges beyond a reasonable doubt in the United States, where Mr. Ameen would be protected by trial rights and more substantial due process rights."

Brennan rebuked them, warning that "unfounded attacks on the credibility of the government" would "open the door to a conspiratorial morass." He added that he found it "improper" for the defense to imply that "the government is simply proceeding in bad-faith and that its representatives have shirked their duty, as officers of the court, to be truthful in their filings."

But there is dishonesty in omission, too; the D.O.J. received the Turkish government's letter soon after Brennan scolded the defense. D.O.J. lawyers said nothing when Barbour brought up the Turkcell records in subsequent filings. And, owing to the rules governing letters rogatory, the request to the Turkish government wasn't signed by Ameen's lawyers—it was signed by Brennan himself. The government has repeatedly urged Brennan to certify extradition while failing to provide access to information he had sought—records that could end their case but save an innocent life.

On Monday, prosecutors filed a response, saying that the delay was "due to a clerical error" and "not a purposeful attempt to withhold Turkey's response." They added that the judge should not wait for the records to arrive before certifying extradition. If Ameen is sent to Iraq, he is likely to be tortured until he confesses to a crime he did not commit, and, on the basis of that confession, sentenced to death by hanging.

---



_Ben Taub_, a staff writer, is the recipient of the 2020 Pulitzer Prize for feature writing. His 2018 reporting on Iraq won a National Magazine Award and a George Polk Award.

---

**More:**   **ISIS**   **U.S. Department of Justice**   **Iraq**   **Refugees**

---