# EXHIBIT 3

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, hereby declare and say as follows:

1. I am an Attorney Adviser for the Department of State, Washington, DC, in the Office of Law Enforcement and Intelligence. This office is the primary office in the Department of State responsible for extradition, including the negotiation and implementation of extradition treaties. My responsibilities require that I be familiar with international law enforcement matters affecting the United States, including extradition matters worldwide. This declaration is intended to provide supplemental information related to the request submitted by the Government of Iraq for the extradition of Ali Yousif Ahmed al-Nouri. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The general scope of the Extradition Treaty Between the United States of America and Iraq (the "Treaty"), signed on June 7, 1934, is set forth in Article I. In that article, the English version of the Treaty states that

   > Agreement has been reached between the High Contracting Parties to deliver up to each other reciprocally, upon mutual requisition duly made pursuant to the provisions of this Treaty, any person charged with or convicted of any of the crimes specified in Article II of this Treaty....

   Article II in turn states that "Persons shall be delivered up according to the provisions of this Treaty, who shall have been charged with or convicted of any of the following crimes...."

3. The phrase "charged with" in the Treaty is not intended to limit the application of the Treaty to situations where charges against a fugitive have only been set forth in a formal charging document analogous to a U.S. indictment. Instead, the Treaty contemplates two broad categories of extradition requests – those for individuals sought for prosecution and those for individuals who are wanted to be sentenced or to serve a sentence. This includes persons wanted for prosecution by Iraq, who are wanted to stand trial for specific crimes, but for whom a formal charging process akin to the one used in the United States may not have taken place.

4. This understanding regarding the application of the Treaty is common in the United States' extradition practice. Language very similar to the "charged with" language in Articles I and II of the Treaty is found in many of the United States' other bilateral extradition treaties, including those with other countries that have procedures for filing charges that differ significantly from those used in the United States. In fact, some of the United States' treaty partners are unable as a legal matter to formally charge a suspect until that suspect appears in that country for some form of legal proceeding, such as questioning by the foreign authority. In the context of these other treaty relationships, the United States has regularly extradited fugitives when they are wanted for prosecution in the other country, even though they have not yet been formally charged as that term is understood in U.S. criminal law. In the context of its extradition relationships with these countries, the United States applies the same interpretation of the "charged with" language as it

does in the context of its extradition treaty with Iraq, namely that extradition is permissible where the fugitive is sought for prosecution in the requesting country.

5. Article XI of the Treaty further underscores that this interpretation of the phrase "charged with" is correct. In listing the documents that must be included in an extradition request, it states: "If, however, the fugitive criminal is merely charged with a crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and copies of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case." Nowhere in this statement of required documents is there any requirement that an indictment or other charging document be included in the extradition request.

6. The Arabic version of the Treaty also confirms that this broad understanding of the term "charged with" is correct in this context. In Arabic, the Treaty uses the word "Muttaham." I understand that this term in the context in which it is used in Articles I and II of the Treaty can be translated into English in a number of ways, including "suspected," "accused," "charged," or "indicted," but is best understood here to mean "a person accused of" crimes listed in the Treaty. Thus, the Arabic word does not suggest that a formal charging process is required to make an offense extraditable under the Treaty.[1]

7. The request for the extradition of Ahmed submitted by the Government of Iraq meets the "charged with" requirement set forth in Articles I and II.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on April 15, 2021.

_____
Tom Heinemann
Attorney Adviser
Law Enforcement and Intelligence

---

[1] The Treaty states that it was "Done in duplicate in Arabic and English" and in the "case of divergence" between the English and Arabic versions, "the English text shall prevail." However, in this case, there is no divergence between the English and Arabic versions of the Treaty. As noted above, when read in context, the English version of the Treaty is best understood to make extradition permissible when the fugitive is sought for prosecution in the requesting country, regardless of whether there is a pending charge as that term is understood under U.S. law. The Arabic version of the Treaty confirms this understanding.