JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAMI JOHNSON
New York State Bar # 4823373
DANIEL L. KAPLAN, #021158
Asst. Federal Public Defenders
Attorney for Defendant
jami_johnson@fd.org
dan_kaplan@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of<br><br>Ali Yousif Ahmed Al-Nouri,<br><br>Defendant. | No. MJ-20-08033-PHX-MTM<br><br>MOTION TO RECONSIDER |

Defendant Ali Yousif Ahmed Al-Nouri ("Mr. Ahmed"), through undersigned counsel, respectfully requests that this Court reconsider its April 21, 2021 Order denying Mr. Ahmed's motion to continue (Doc. 204). The Court denied Mr. Ahmed's notion in part because it appears to have believed that the forthcoming extradition hearing is necessary in order for the United States to fulfill some obligation under the United States-Iraq extradition treaty. (Doc. 204 at 2.) The Court also faulted Mr. Ahmed for not identifying specific evidence he seeks to collect or specific witnesses he wishes to interview or how this evidence will "explain away" probable cause. (*Id.*) In addition, in making its decision on the motion to continue on April 21, 2021, this Court did not have the benefit of the order declining to certify extradition in the case of Omar Ameen, which was filed

in the Eastern District of California mere hours before this Court issued its ruling, and which is based virtually entirely on evidence that Mr. Ameen discovered during the course of his international investigation conducted before the COVID-19 pandemic rendered such investigation impossible. Doc. 298, Mem. and Order Declining to Certify Extradition, *In the Matter of the Extradition of Omar Abdulsatr Ameen to the Republic of Iraq*, No. 2:18-mj-152-EFB (Apr. 21, 2021). Each of these factors separately, or in combination, warrants reconsideration of this Court's order.

### I. The United States Has No treaty Obligation to Extradite Mr. Ahmed.

In denying Mr. Ahmed's motion to continue, the Court considered "the interest the government has of fulfilling its treaty obligations with foreign states in a timely manner . . . ." (Doc. 204 at 2.) The United States however has no obligation whatsoever to extradite Mr. Ahmed to Iraq under the negotiated-for terms of that treaty. As all parties have acknowledged since the start of these proceedings, Mr. Ahmed is a citizen of the United States. Article VIII of the U.S.-Iraq extradition treaty specifically provides that "neither of the High Contracting Parties shall be bound to deliver up its own citizens." (Doc. 3-3 at 11.) Thus, the United States is not obligated under the terms of the treaty to render Mr. Ahmed to Iraq, and the forthcoming extradition hearing is not necessary to fulfill any obligation on the part of the United States under the treaty.

Moreover, the country of Iraq, subsequent to entering into the extradition treaty with the United States, adopted a constitution that expressly prohibits extradition of *Iraqi* citizens to the United States. (Doc. 200-3 at 25–26.) That is to say, if an Iraqi citizen were to kill two policemen in an act of terrorism in the United States and flee to Iraq, Iraq would in all cases decline to return him to the United

States merely on account of his citizenship. The record is therefore abundantly clear that there is no treaty obligation at issue in this case.

## II. Mr. Ahmed Has a Concrete Plan for Investigation.

The order states that "defendant identifies no specific evidence he seeks to collect or witnesses he wishes to interview in Iraq." (Doc. 204 at 2.) Mr. Ahmed did not disclose the details of his proposed investigation in his motion to continue, because such information constitutes protected attorney work-product, the disclosure of which to the United States could reasonably be expect to harm his legal case. Mr. Ahmed nevertheless avows that he has, in consultation with his retained expert investigators, formulated an investigative plan, and that Mr. Ahmed's expert, having reviewed the file, believes such an investigation can reasonably be carried out once conditions in Iraq improve sufficiently to permit safe travel. (Doc. 194-1 at 3.) Mr. Ahmed nevertheless attaches to this motion as Exhibit 1 a non-exhaustive list, filed ex parte under seal, identifying witnesses Mr. Ahmed anticipates being able to interview and documents he anticipates collecting that will provide relevant, admissible information in connection with his extradition hearing.

## III. The Order Declining to Certify the Extradition of Omar Ameen Provides Additional Basis for this Court to Reconsider.

On April 21, 2021, Magistrate Judge Edmund F. Brennan of the Northern District of California issued an order denying the government's request for a certificate of extradition and ordering Mr. Ameen released from custody. Doc. 298, No. 2:18-mj-152-EFB (N.D. Cal. Apr. 21, 2021). Judge Brennan declined to certify the case for extradition because he found that evidence amassed by the defense obliterated probable cause. Specifically, Judge Brennan found that "[t]he evidence strongly supports that Ameen never left Turkey in June 2014 [when the charged murder allegedly occurred in Iraq], and the record before the court, taken in its

3

entirety, does not establish probable cause that he was responsible for [the victim's] murder." *Id.* at 30.

Significantly, virtually all of the evidence that Judge Brennan relied on in declining to certify extradition was evidence amassed by Mr. Ameen through his international investigation during the more than 2 years, 8 months between his arrest on August 15, 2018 and the entry of Judge Brennan's order. For example, the court relied on refugee logbooks Mr. Ameen signed every week, as required by Turkish law. *Id.* at 19. These logbooks were obtained when "a defense investigator travelled to Turkey, to the Mersin Immigration Office, and requested Ameen's sign-in logs for the (sic) June 2014," the month of the alleged murder. *Id*. The court relied on witness declarations collected in Turkey and Iraq attesting to Mr. Ameen's presence in Turkey and absence from Rawah (the site of the murders) at the time of the murder. *Id.* The court considered text messages obtained in Iraq from the victim that were sent on the day of the murders that name several known ISIS militants—but not Mr. Ameen—who were likely the actual perpetrators of the offense of which Mr. Ameen was falsely accused. *Id*. at 19–20. The court took into account that Mr. Ameen, like Mr. Ahmed, passed a polygraph exam in which he denied involvement in the alleged murder. *Id*. at 20. The piece of evidence the court deemed "most critical" however was Mr. Ameen's cell phone records, obtained pursuant to Letters Rogatory to the government of Turkey and not turned over to Mr. Ameen until January 2021—more than two years after Mr. Ameen's arrest.

Each and every piece of evidence relied upon by Judge Brennan in finding that the government had failed to establish probable cause was obtained through international investigation—an international investigation that was possible because unlike Mr. Ahmed, Mr. Ameen was not arrested immediately before the outbreak of a global pandemic that has curtailed international travel and disrupted

health and security systems in poorer nations such as Iraq. But for this international investigation, Mr. Ameen would have had only what Mr. Ahmed now has: an extradition packet with internally contradictory and confusing allegations the logic of which strain credulity; firm knowledge that he did not commit the charged offenses; a polygraph exam confirming his innocence; evidence from United States State Department reports that the government of Iraq has a history of leveling false terrorism accusations for political purposes; and evidence from those same State Department reports that "evidence" obtained by the government of Iraq is often unreliable because it is frequently obtained by torture, coercion or other unreliable means.

The recently issued decision in the *Ameen* case confirms the importance of an international investigation to the just resolution of this case. It also confirms that counsel's inability to perform such an investigation will render their representation ineffective.

### IV. Conclusion

Wherefore, Mr. Ahmed respectfully requests that this Court reconsider its April 21, 2021 order denying Mr. Ahmed's motion to continue.

Respectfully submitted: April 29, 2021.

JON M. SANDS
Federal Public Defender

 *s/Jami Johnson*
JAMI JOHNSON
DANIEL L. KAPLAN
Asst. Federal Public Defenders