GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

TODD M. ALLISON
Arizona State Bar No. 026936
DAVID A. PIMSNER
Arizona State Bar No. 007480
RACHEL C. HERNANDEZ
Arizona State Bar No. 016543
DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Todd.Allison@usdoj.gov
Email: David.Pimsner@usdoj.gov
Email: Rachel.Hernandez@usdoj.gov
Email: Dimitra.Sampson@usdoj.gov
Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of Ali Yousif Ahmed Al-Nouri a/k/a Ali Youssef Ahmed Al-Nouri, Ali Ahmed, Ali Yousif Ahmed Al Noori, Ali Yousif Ahmed Nouri, Ali Al-Daleme, Ali Yousif Ahmed Al-Mahmadi, Ali Yousif Ahmed, and Ali Yousif Nouri. | No. 20-8033MJ<br><br>**UNITED STATES' MOTION IN LIMINE TO EXCLUDE AHMED'S EXPERT OPINION EVIDENCE** |

The United States of America, through undersigned counsel, hereby moves to exclude certain evidence from the extradition hearing. Much of the testimony Ali Yousif Ahmed Al-Nouri ("Ahmed") seeks to introduce via his noticed expert, Professor Haider Ala Hamoudi, is irrelevant and beyond the scope of these proceedings. The Court should therefore exclude such evidence and reject the arguments based thereon.

## I. Extradition Hearings Are Limited in Scope.

Extradition is primarily an executive function with only a limited role for the Court. Unlike a criminal proceeding, its purpose is to decide the sufficiency of the charge under the relevant treaty, not guilt or innocence—that is for the foreign court. *Neely v. Henkel*,

180 U.S. 109, 123 (1901); *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005) (en banc). Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition hearings. *See* Fed. R. Crim. P. 1(a)(5) (stating that "extradition and rendition of a fugitive" are not governed by rules); Fed. R. Evid. 1101(d)(3) (evidence rules are inapplicable to "miscellaneous proceedings such as . . . extradition or rendition").

This Court recently acknowledged as much when it stated, "[a]n extradition proceeding is 'not to be converted into a dress rehearsal for trial.'" (Doc. 204, citing *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988).) The government incorporates by reference its extensive briefing explaining the limited nature of an extradition hearing and the unique procedures applied to such hearings, including the rule of non-inquiry, which support granting this motion. (*See e.g.*, Doc. 59, Doc. 199.)

## II. The Bulk of Professor Hamoudi's Opinions and Testimony Should Be Excluded as Irrelevant.

"Admission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the court, guided of course by the principle that evidence of facts contradicting the demanding country's proof or establishing a defense may properly be excluded." *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978). Evidence should be excluded from an extradition hearing if it would require the Court to make determinations outside of the scope of the hearing or within the province of the ultimate trier of fact. *Cf. id.* at 1368 ("[T]he extraditing court properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity. . . . Because of the limited function of an extradition proceeding and the limited participation permitted of the fugitive, the order of the court does not reflect a consideration of all the merits of the case."); *Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962) ("The accused is not entitled to introduce evidence which merely goes to his defense . . . since the extradition proceeding is not a trial of the guilt or innocence but of the character of a preliminary examination held before a committing magistrate to determine whether the accused shall be held for trial in another tribunal."); *In re Extradition of Powell*, 4 F. Supp. 2d 945, 958

(S.D. Cal. 1998) (denying fugitive's motion to introduce evidence, and finding that fugitive was "foreclosed from presenting evidence as to the unreliability of witnesses because . . . [that would] change an extradition hearing into more than it is meant to be, *i.e.*, a minitrial" and "it is inappropriate to present evidence contradicting that proffered by the [requesting country]"). A contrary rule might improperly compel the "demanding government to produce all its evidence . . . both directing and rebutting, in order to meet the defense thus gathered from every quarter." *See Collins v. Loisel*, 259 U.S. 309, 316 (1922) (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)).

The following categories of expert opinion offered by Professor Hamoudi are outside of the scope of the extradition hearing: (1) the state of the Iraqi justice system, (2) the availability of the death penalty in Iraq, (3) Iraq's practice regarding the extradition of its nationals, and (4) the procedural history of the criminal proceedings against Ahmed in Iraq. (Doc. 200-3.) Accordingly, the Court should exclude such testimony.

    a.    *Purported "Deficits of Justice in the Iraqi Criminal Justice System" Are Impermissible Considerations at an Extradition Hearing.*

Rather than addressing matters relevant to this Court's certification decision, Professor Hamoudi opines extensively about (1) the operation of the Iraqi criminal justice system, (2) the systemic problems that "make it impossible to imagine that [Ahmed] will receive anything resembling a fair trial" in Iraq (Doc. 200-3, ¶¶ 151-163), (3) the "chaotic" state of the record in Iraq (Doc. 200-3, ¶ 169), and (4) how the existence of eyewitness reports means that the decision "has been made that [Ahmed] is guilty of these murders and numerous unspecified others" (Doc. 200-3, ¶ 168) and that he will be made to confess through "physical intimidation" (Doc. 200-3, ¶ 168). This Court should decline to consider Professor Hamoudi's opinions relating to these purported humanitarian issues in Iraq (Doc. 200-3, ¶¶ 133-169), as they are immaterial to this extradition proceeding.

"[I]t is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state." *Prasoprat v. Benov*,

421 F.3d 1009, 1016 (9th Cir. 2005). "[U]nder what is called the 'rule of non-inquiry' in extradition law, courts in this country refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely." *Lopez-Smith v. Hood*, 121 F.3d 1322, 1327 (9th Cir. 1997); *see also e.g.*, *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911) ("We are bound by the existence of an extradition treaty to assume that the [fugitive's] trial will be fair."); *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("Under the rule of non-inquiry, courts refrain from investigating the fairness of a requesting nation's justice system.") (citation and internal quotation marks omitted); *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971) ("[W]e are not at liberty to speculate that the [requesting state] will not recognize and live up to the obligations subsisting between it and the United States. Neither are we permitted to inquire into the procedure which awaits the appellant upon his return. Such matters, so far as they may be pertinent, are left to the State Department, which ultimately will determine whether the appellant will be surrendered to the [requesting state's] Government.") (citation and internal quotation marks omitted).[1]

For these reasons, the court in another matter involving a separate extradition request from Iraq excluded an affidavit also offered by Professor Hamoudi, which similarly described the "severe and obvious deficits" in the Iraqi justice system. *In re Extradition of Ameen*, No. 2:18-MJ-152-EFB, 2021 WL 1564520, at *4 (E.D. Cal. Apr. 21, 2021) (noting that "it is not permitted to weigh the fairness of [Iraq's] justice system") (citing *Neely*, 180 U.S. at 123; *Leiva v. Warden*, 928 F.3d 1281, 1295 (11th Cir. 2019)). This Court should

---

[1] In his recent reply relating to detention, Ahmed refers to a State Department Report on Human Rights Practices in Iraq for the proposition that the "parties [] agree" that the Iraq legal system is "hopelessly corrupt" and relies on evidence "extracted through torture or coercion." (Doc. 207.) First, the government is unaware of any evidence that the witness statements here were procured through torture or coercion, and denies any agreement on that point. Second, the fact that the State Department has explored the condition of the Iraqi legal system only further underscores the rationale for the rule of non-inquiry. The humanitarian conditions in Iraq will be evaluated by the State Department if and after this Court certifies the extradition, and are not proper considerations here.

do likewise by excluding Professor Hamoudi's opinions set forth in Doc. 200-3, ¶¶ 133-169.[2]

   b.   *Whether the Death Penalty Exists in Iraq Is Irrelevant.*

Professor Hamoudi asserts that "Iraq wishes ultimately to charge [Ahmed] with a crime that carries a potential death penalty" and that the death penalty was not in effect in Iraq at the time the crimes alleged in the extradition request were committed. (Doc. 200-3, ¶¶ 72, 73-81.) These opinions are irrelevant to this Court's inquiry and should be excluded.

In *Prasoprat*, the Ninth Circuit held that the existence of the death penalty in the requesting country was not a proper consideration for the extradition court. 421 F.3d at 1015 ("When the offense for which extradition is sought is punishable by death, the question of whether to refuse extradition on that basis is within the authority of the executive branch, not the judicial branch."). In accordance with this precedent, the Court should decline to consider any arguments tied to the existence of the death penalty in Iraq.

Moreover, to the extent that Professor Hamoudi's opinions on the death penalty relate to the minutiae of the Iraqi criminal code and an interpretation of Iraq's constitution, these are similarly improper inquiries in the extradition context. *See, e.g.*, *Grin v. Shine*, 187 U.S. 181, 190 (1902) ("[I]t can hardly be expected of us that we should become conversant with the criminal laws [the requesting country], or with the forms of warrants of arrest used for the apprehension of criminals."); *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011) ("Any arguments regarding the demanding country's compliance with its own laws . . . are properly reserved for the courts of that country.").

Additionally, to the extent that Professor Hamoudi's opinion on this topic is based on his impression of Iraq's "wishes" (Doc. 200-3, ¶ 72), it is irrelevant. "[T]he Secretary of State has sole discretion to determine whether a request for extradition should be denied

---

[2] Although Ahmed posits in his Extradition Brief (Doc. 200 at 36-39) that *Prasprat*'s clear bar on judicial consideration of humanitarian issues in extradition proceedings does not apply here, he is incorrect. As the government will further detail in its forthcoming response due to be filed on May 14, 2021, neither the Ninth Circuit nor any other court has ever employed an exception to the rule of non-inquiry in extradition proceedings. This Court should not be the first.

because it is a subterfuge made for the purpose of punishing the accused for a political crime. . ." *Quinn v. Robinson*, 783 F.2d 776, 789 (9th Cir. 1986); *see also, e.g.*, *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) (motives of requesting state are a matter for consideration by the executive branch).

Accordingly, this Court should exclude Professor Hamoudi's opinions relating to the death penalty set forth at Doc. 200-3, ¶¶ 72-81.

      c.    *Whether Iraq Would Extradite Its Citizens to the United States Is Irrelevant.*

Professor Hamoudi asserts that "as a matter of Iraqi constitutional law" an Iraqi citizen "could not be extradited to the United States." (Doc. 200-3, ¶¶ 86, 82-87.) Such an opinion is immaterial to this Court's consideration of Iraq's request for the extradition of Ahmed, who is a naturalized U.S. citizen.

"United States citizenship does not bar extradition by the United States." *Quinn v. Robinson*, 783 F.2d 776, 789-90 (9th Cir. 1986). And even assuming *arguendo* that Professor Hamoudi's opinion is correct, the fact that Iraq might not grant extradition in reciprocal circumstances to those here has no bearing on whether the requirements for certification have been satisfied. As the Supreme Court has explained, the fact that a country requesting extradition does not extradite its nationals based on a prohibition under its law "would not require of necessity that we should, as a matter of logic or law, regard ourselves as free from, the obligation of surrendering our citizens." *Charlton v. Kelly*, 229 U.S. 447, 476 (1913). Such a practice in the requesting country is thus not a basis on which to deny certification. *Id.* This Court should therefore exclude Professor Hamoudi's opinions on this topic set forth at Doc. 200-3, ¶¶ 82-87.

      d.    *Whether or How the Case Against Ahmed Has Been Charged or Transferred Within Iraq Is Irrelevant.*

Professor Hamoudi suggests that the extradition request suffers from "procedural defects" because the case against Ahmed "currently lies within the jurisdiction of an investigative court" and because the case has been "transferred from court to court in a

manner that seems to conflict . . . with Iraq's criminal procedure rules." (Doc. 200-3, ¶¶ 3, 26-42, 68-71.) However, as discussed extensively in the United States' Memorandum in Support of Extradition (Doc. 199), this opinion is barred by the rule of non-inquiry, which limits "[j]udicial inquiry into foreign criminal procedural issues." *Fejfar v. United States*, 724 F. App'x 621, 622 (9th Cir. 2018). It is beyond the purview of an extradition court to review "whether the demanding country has complied with its own law" beyond compliance with the treaty. *Skaftouros*, 667 F.3d at 156; *see also Noeller v. Wojdylo*, 922 F.3d 797, 805 (7th Cir. 2019) ("[E]xtradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law.").

In any event, even if taken as true, Professor Hamoudi's opinions would not conclusively demonstrate that the extradition request is defective. Even if Ahmed is sought for further investigation as Professor Hamoudi claims, in accordance with applicable Ninth Circuit precedent and the view of the U.S. Department of State, he is sufficiently "charged" within the meaning of the applicable treaty. (*See* Doc. 199 at 34-38.) And even if Ahmed's case has been transferred, Professor Hamoudi does not claim that such transfers definitively violated Iraq's criminal procedure nor does he explain that they cannot be remedied or that they somehow prevent Ahmed's prosecution or invalidate the warrant for his arrest. (*See* Doc. 200-3, ¶ 68 (noting that transferring the case "seems to conflict" with Iraq's procedural rules); Doc. 200-3, ¶ 71 (noting there is no "suggestion anywhere that the conditions required by law were followed in the transferring of these cases").) This Court should therefore exclude Professor Hamoudi's opinions set forth at Doc. 200-3, ¶¶ 26-42, 68-71.[3]

---

[3] Professor Hamoudi also opines that "[t[here is no crime clearly specified in the Extradition Request" (Doc. 200-3, 43-67); however, the Court does not require expert assistance to consider such an issue. The request specifies that Ahmed's extradition is sought for a violation of Article 406(1)(A) of the Iraqi Penal Code No. 111 of 1969, *see, e.g.*, Extrad. Req. at 5, 18, 20, and it includes a copy of the text of that statute, *id.* at 21, along with the warrant for Ahmed's arrest identifying the same crime, *id.* at 48.

### III. Conclusion

The proffered testimony would require the Court to make determinations which are properly reserved for the State Department or Iraq, the requesting country. Given the limited purpose of an extradition hearing—to determine the sufficiency of the evidence to sustain the charge and effectuate the purposes of the treaty—Ahmed's proposed expert opinions found in Paragraphs 26-87 and 133-169 should be excluded.

If this Court determines that evidence of Iraqi criminal procedure and constitutional interpretation is relevant and admissible, the government respectfully reserves the right to seek to supplement its expert disclosure with a relevant expert on Iraq's laws.

RESPECTFULLY SUBMITTED this 30th day of April, 2021.

>GLENN B. McCORMICK
>Acting United States Attorney
>District of Arizona
>
>*s/ Todd M. Allison*
>TODD M. ALLISON
>DAVID A. PIMSNER
>RACHEL C. HERNANDEZ
>DIMITRA H. SAMPSON
>Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing documents, and sent the attached document to the following registrant(s):

Jami Johnson
Dan Kaplan
*Counsel for Ali Yousif Ahmed Al-Nouri*

*s/ Theresa Hanson*
United States Attorney's Office