JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAMI JOHNSON
New York State Bar # 4823373
DANIEL L. KAPLAN, #021158
Asst. Federal Public Defenders
Attorney for Defendant
jami_johnson@fd.org
dan_kaplan@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Ali Yousif Ahmed Al-Nouri,<br><br>Defendant. | No. MJ-20-08033-PHX-MTM<br><br>MOTION IN LIMINE RE: TOM HEINEMANN |

Defendant Ali Yousif Ahmed Al-Nouri ("Mr. Ahmed"), through undersigned counsel, respectfully moves in limine to exclude the April 15, 2021 declaration of U.S. Department of State Attorney Advisor Tom Heinemann, submitted as Exhibit 3 to the United States' Memorandum in Support of Extraditoin (Doc. 199-3).

In this declaration, Mr. Heinemann offers his legal opinion that the U.S.-Iraq extradition treaty's requirement that a relator be "charged with" an enumerated crime in order to be extraditable does not actually require that the relator have been "formally charged" with one of those crimes – or any crime at all.

Mr. Heinemann purports to base his opinions on his "personal knowledge" and "information made available to [him] in the performance of [his] official duties." Although the Rules of Evidence do not directly apply in this proceeding, they may be used "as a guide" (*Matter of Requested Extradition of Smyth*, 61 F.3d 711, 720–21 (9th Cir.), *amended sub nom. Matter of Smyth*, 73 F.3d 887 (9th Cir. 1995)), and applied as necessary to "ensure certain minimum standards of due process." M. Cherif Bassiouni, *International Extradition: United States Law and Practice* at 825 (6th ed. 2014). Pursuant to these rules, and the due process principles underlying them, the Court should exclude this declaration for either or both of two independently sufficient reasons.

First, determining the meaning of treaties "'is emphatically the province and duty of the judicial department.'" *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 334 (2006) (*quoting Marbury v. Madison*, 5 U.S. 137, 177 (1803)); *accord Jones v. Meehan*, 175 U.S. 1, 32 (1899) ("The construction of treaties is the peculiar province of the judiciary."). This Court thus has no need of an expert to tell it how to construe the U.S.-Iraq extradition treaty, and Mr. Heinemann should not be permitted to presume to do so.

Second, Mr. Heinemann fails to identify any foundation for his opinions that would render them useful to the Court in conducting the essentially legal and judicial function of interpreting and applying the language of the treaty. *Cf.* Fed. R. Evid. 702 (expert testimony must rest on specialized knowledge, sufficient facts or data, and reliable principles and methods reliably applied). Mr. Heinemann purports to base his

opinion on "personal knowledge" and "information made available to [him] in [his] official duties." Yet Mr. Heinemann obviously has no "personal knowledge" of the course of negotiations over a treaty executed in 1934, and he fails to identify any specific "knowledge" or "information" upon which he does rely.

This failure is most glaring in the final portion of Mr. Heinemann's declaration, in which he purports to express an "expert" opinion on the meaning of an Arabic word – despite claiming no actual knowledge of the Arabic language. But it is equally reflected in the rest of the declaration, in which Mr. Heinemann makes broad assertions about a certain "understanding" being "common," and certain language being found in "many" treaties with countries whose criminal procedures "differ significantly" from those followed in the United States without identifying a single example or explaining a single specific basis for these assertions.

In short, for all Mr. Heinemann's declaration shows, he is simply a random State Department lawyer who presumes to tell this Court how to interpret a treaty and to make important assertions – including about a language he most likely does not speak – with no discernible basis. The possibility of such opinions being given weight in any case, let alone a case involving a possible death sentence, would be a grievous affront to fundamental principles of due process. *See Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986) (noting relator's right to due process in extradition proceeding). And this possibility is particularly troubling here, in light of the fact that Mr. Heinemann's "personal knowledge" and "official duties" apparently did not alert him to the facts that

3

the U.S.-Iraq extradition treaty does not authorize the extradition of United States citizens (*Valentine v. United States ex rel. Neidecker*, 299 U.S. 5 (1936); Doc. 200 at 45–47), or that some explanation of why an extradition treaty remains in effect is called for after the parties have fought a war, let alone two. *United States v. Deaton*, 448 F. Supp. 532, 534 (N.D. Ohio 1978); Doc. 200 at 42–45; *cf.* Doc. 3-3 at 2, 4.

        Respectfully submitted:    April 30, 2021.

                            JON M. SANDS
                            Federal Public Defender

                            *s/Jami Johnson*
                            JAMI JOHNSON
                            DANIEL L. KAPLAN
                            Asst. Federal Public Defenders