JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAMI JOHNSON
New York State Bar # 4823373
DANIEL L. KAPLAN, #021158
Asst. Federal Public Defenders
Attorneys for Defendant
jami_johnson@fd.org
dan_kaplan@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of<br><br>Ali Yousif Ahmed Al-Nouri,<br><br>Defendant. | No. MJ-20-08033-PHX-MTM<br><br>MOTION TO COMPEL DISCOVERY RE: OMER MOHAMMED HAMEED |

Defendant Ali Yousif Ahmed Al-Nouri ("Mr. Ahmed"), through undersigned counsel, hereby moves this Court to compel discovery of information regarding the involvement of Omer Mohammed Hameed ("Hameed") in the investigation or prosecution of this case consistent with this Court's Order dated March 31, 2021. (Doc. 191.) On May 2, 2021, undersigned counsel learned through Mr. Ahmed's family that in or around late 2018 Hameed, who is believed to have then resided in Milwaukee, traveled from the United States to Iraq, where he met with Mr. Ahmed's family for what Mr. Ahmed's family initially believed to be a …

friendly social visit, at the conclusion of which Hameed demanded that the family give him $40,000 in order to avoid the filing of the false allegations at issue in this case. A copy of photographs of Hameed with Mr. Ahmed's family, which were taken by Mr. Ahmed's family during the visit, are attached hereto as Exhibit 1.

Mr. Ahmed does not know the relationship between Hameed and either of the victims or any of the plaintiffs in this case, nor has Hameed's name come up in any of the discovery Mr. Ahmed has received. Mr. Ahmed does however recall being asked by the FBI during at least one of his consensual interviews whether there was anyone in the United States who had a problem with him, and whether there was anyone in the United States who knew him in Iraq. These questions suggest the FBI may have been communicating with an informant or other individual in the United States whose truthfulness or motives they themselves questioned, who may have been claiming to have known Mr. Ahmed in Iraq.

Mr. Ahmed's family, which includes an older brother and a nephew who are policemen, knows Mr. Ahmed is not and never has been a member of a terrorist organization, and declined to pay Hameed. Shortly after the family declined to pay Hameed, and according to documents in the extradition packet, a plaintiff in Lt. Issam's murder suddenly came forward – 12 years after the death of Lt. Issam and for no reason that is clear from the file – to claim that Mr. Ahmed killed Lt. Issam. (Doc. 3-3 at 94.) A few months after that, a plaintiff in the murder of Khalid – a plaintiff who had more than 10 years before given a statement in which the plaintiff appeared to disclaim all knowledge of who killed Khalid (Doc. 3-3 at 62) as well as a second statement blaming someone other than Mr. Ahmed (Doc. 3-3 at 64) – came to court and announced for the first time that on the day of Khalid's murder, plaintiff "rushed out of house" upon hearing "the sound of gun fire" and learned

from bystanders at the scene of the murder that Mr. Ahmed had killed Khalid (Doc. 3-3 at 61). Each of these plaintiffs demands "compensation" for the murder.

Also shortly after Hameed's attempt at extortion was rebuffed, "witnesses" began to come forward with pro forma recitations that they "saw" Mr. Ahmed shoot Khalid 12 years earlier with no explanation whatsoever of why they delayed more than a decade in coming forward, why they had never before bothered to tell the police or the plaintiffs what they had seen, why they were choosing this moment to come forward, why their accounts conflict with eyewitness accounts given closer in time to the events, or any other information one would reasonably expect would be included to explain such remarkably convenient statements. (Doc. 3-3 75, 76.)

Mr. Ahmed's family further reports that to date no one other than Hameed has ever contacted them regarding the false allegations in the extradition packet – no one from the Iraqi police, and no one from the families or tribes of either victim in the tribal alternative dispute resolution system commonly employed by Iraqis who do not trust or do not want to go through the police.

Upon learning of Hameed's attempted extortion, counsel for Mr. Ahmed contacted the government to request any and all information in the government's possession, custody, or control regarding Mr. Hameed's involvement in this case and cited this Court's order of March 31, 2021. Counsel also provided a partial copy of Hameed's U.S. driver's license as well as the photographs attached as Exhibit 1. The government responded that "without additional evidence supporting Mr. Ahmed's family's claims or any specific connection between their claims and the evidence in the Extradition Request" the government did not consider the information requested to be discoverable under this Court's order.

**Argument**

While he does not have a right in an extradition hearing to present evidence that merely contradicts evidence in the extradition packet, a relator does have a right to prevent evidence that "explains" the evidence in the extradition packet. *Charlton v. Kelly*, 229 U.S. 447, 461–62 (1913). Defendant must be allowed to present evidence that "explains away or completely obliterates probable cause." *Santos v. Thomas*, 830 F.3d 987, 922 (9th Cir. 2016) (en banc). The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate, but the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut evidence of limited scope that would have some reasonable chance of negating a showing of probable cause. *Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978). As this Court has recently noted, facts that show an incentive to "point the finger" at the relator "diminish[ ] the credibility" of statements, and are therefore relevant to a probable cause determination. Order, *United States v. Ricardo Fraser*, Case No. 2:20-mj-00170-MTM at *9 (May 17, 2021) (citing *United States v. Vera*, 893 F.3d 689, 693–94 (9th Cir. 2018)).

This Court has already ordered that the government produce all evidence "that would undercut or obliterate probable cause that Ahmed committed the crimes alleged in the" extradition packet. (Doc. 191 at 7.) The information and documents requested fall well within this Order, for two reasons.

First, the extortion attempt, especially when combined with the plaintiffs' demands for "compensation," raise the significant possibility that the statements in the extradition packet are the product of threats and/or bribery. If Hameed had the ability to carry through on his threat to make serious criminal charges against

4

Ahmed appear in Iraqi court, as it appears he did, he presumably had connections to individuals in Iraq who could effectively threaten and/or bribe Iraqi witnesses into signing incriminating statements. Such information is "explanatory" because it "addresses the circumstances under which the government's witnesses made inculpatory statements." *Santos*, 830 F.3d at 1004. If the allegations are part of an extortion scheme, it is reasonable to infer that the people who made the incriminating statements were threatened and/or paid off to make them. Evidence, for example, that Hameed was involved in the investigation of these accusations, or in the finding of witnesses, would explain why the statements were made. Neither coerced nor "paid-for" evidence provide sound support for a probable cause finding. Order, *United States v. Ricardo Fraser*, Case No. 2:20-mj-00170-MTM at *9 (May 17, 2021) (quoting *In re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1123 (E.D. Cal. 2003); *see also Strunk*, 293 F. Supp. 2d at 1125 ("Payment to a defendant to confess his and others participation in a murder will cast doubt on the validity of the statement."). Evidence of the involvement of an individual with a financial motive in the investigation of the case is therefore relevant, admissible, and of sufficiently limited scope to avoid transforming the extradition hearing into a trial on the merits.

Second, the information Mr. Ahmed seeks would assist the Court with its obligation to consider whether evidence in the extradition packet was improperly obtained. *Santos*, 830 F.3d at 1007. In *Santos*, the Ninth Circuit held that the Court has not merely the ability but the "obligation" to, at a minimum, "consider[]" evidence that might undermine the credibility of the process used to obtain evidence. *Id*. This Court cannot do that if such information is withheld. At least one individual – Hameed – appears to have a financial interest in this case. Mr.

Ahmed's family has no motive to falsely accuse Hameed, nor could they have had any way of knowing of his involvement with this case but for his extortion attempt, because his name has never been shared with Mr. Ahmed or anyone on the defense team. To the extent the government has evidence that Hameed was involved in investigating or prosecuting this case, or in locating witnesses, the Court has an obligation to consider this evidence and determine whether and how it bears upon the probable cause determination.

    Mr. Ahmed therefore respectfully requests that the Court order that the government produce any and all evidence in its possession, custody, or control from any source regarding the involvement of Hameed in the investigation or prosecution of this case.

Respectfully submitted: May 20, 2021.

JON M. SANDS
Federal Public Defender

*s/Jami Johnson*
JAMI JOHNSON
DANIEL L. KAPLAN
Asst. Federal Public Defenders