GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

TODD M. ALLISON
Arizona State Bar No. 026936
DAVID A. PIMSNER
Arizona State Bar No. 007480
RACHEL C. HERNANDEZ
Arizona State Bar No. 016543
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Todd.Allison@usdoj.gov
Email: David.Pimsner@usdoj.gov
Email: Rachel.Hernandez@usdoj.gov

REBECCA A. HACISKI
District of Columbia Bar No. 996656
Trial Attorney, Office of International Affairs
Criminal Division, U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20530
Telephone: 202-616-2534
Email: Rebecca.Haciski@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Extradition of Ali Yousif Ahmed Al-Nouri a/k/a Ali Youssef Ahmed Al-Nouri, Ali Ahmed, Ali Yousif Ahmed Al Noori, Ali Yousif Ahmed Nouri, Ali Al-Daleme, Ali Yousif Ahmed Al-Mahmadi, Ali Yousif Ahmed, and Ali Yousif Nouri. | No. 20-8033MJ<br><br>**UNITED STATES' RESPONSE TO MOTION TO COMPEL DISCOVERY RE: OMER MOHAMMED HAMEED** |

Fugitive Ali Yousif Ahmed Al-Nouri ("Ahmed") moves to compel production of "any and all evidence in [the Government's] possession, custody, or control from any source regarding the involvement of [Omer Mohammed] Hameed in the investigation or prosecution of this case." (Doc. 236 at 6.) Ahmed's eleventh-hour motion is highly speculative and lacks any evidentiary foundation for this extremely overbroad discovery

request.  Just like Ahmed's first motion to compel and similar overbroad requests, the motion is not even arguably tailored to material that actually "explains away or completely obliterates probable cause."  *See Santos v. Thomas*, 830 F.3d 987, 992 (9th Cir. 2016) (quotation omitted).  The Court should not enter such a sweeping disclosure order on the eve of the extradition hearing.

The Court has already reasonably established the scope of discovery:  "exculpatory materials . . . that would undercut or obliterate probable cause that Ahmed committed the crimes alleged in the Complaint."  (Doc. 191 at 7.)  If the United States located evidence corroborating statements of Ahmed's family (e.g., evidence that Mr. Hameed demanded money to avoid the filing of false allegations in Iraq, or actually did file false charges), then it would view that sort of evidence as discoverable under the Court's Order.  To be clear, no such corroboration of the story told among Ahmed's family has been located to date.  In fact, as laid out below, there are substantial reasons to doubt it.  But acting in good faith and in an abundance of caution, the United States does wish to have a fair opportunity to re-review what are voluminous law enforcement materials to search for any evidence corroborating Ahmed's family's story that would undercut or obliterate probable cause.

Thus, the United States respectfully requests entry of the attached proposed order, which grants the motion in part, limited to a properly-tailored disclosure, and otherwise denies the motion.  (*See* **Exhibit 1** (Proposed Order).)  Given the volume of materials to be searched and the extreme lateness of Ahmed's motion, the United States requests approximately 45-60 days to conduct such a search.  Thus, the United States respectfully asks the Court to enter the attached proposed order and, as forecast at the recent status conference, continue the extradition hearing for mid-July.

**I.     DEFENDANT'S OVERBROAD MOTION SHOULD BE DENIED, EXCEPT FOR THE LIMITED EXTENT DISCUSSED HEREIN.**

**A.     Ahmed's Family's Story Does Not Withstand Scrutiny.**

According to Ahmed's motion, "in or around late 2018," Mr. Hameed "traveled from the United States to Iraq" to meet with Ahmed's family, at which time he supposedly

"demanded that the family give him $40,000 in order to avoid the filing of the false allegations at issue in this case." (Doc. 236 at 1-2.) According to Ahmed, "[s]hortly after the family declined to pay Hameed, and according to documents in the extradition packet, a plaintiff in Lt. Issam's murder suddenly came forward" with the allegation that Ahmed killed the victim. (*Id.* at 2.) Ahmed further claims that other witnesses also came forward "shortly after Hameed's attempt at extortion was rebuffed." (*Id.* at 3.) From this, the motion insinuates that certain statements in the Extradition Request dated in late 2018 and 2019 were a result of this alleged extortion scheme. (*Id.* at 2, 4-5.)

For many reasons, however, the family's story that they were extorted by Mr. Hameed "in or around late 2018," followed "shortly after" by witnesses coming forward, does not hold up under any form of scrutiny. It is certainly lacking in the kind of evidentiary support that could justify requiring the United States to canvass for and make the sweeping disclosures his motion demands. For instance:

### 1. Mr. Hameed Did Not Exit the United States in "Late 2018."

As noted in the motion, Ahmed's counsel sent personally identifying information about Omer Mohammed Hameed to the United States on May 10, 2021. (Doc. 236 at 3.) In response, the United States investigated and asked U.S. Customs and Border Protection to pull Mr. Hameed's travel records into and out of the United States. (*See* **Exhibit 2** (TECS Report) at 1.) The CBP records show that the only time that Mr. Hameed traveled outside the United States in 2018 (flights to and from Istanbul, Turkey) were on January 26, 2018, returning to the United States on February 19, 2018. (*Id.*) Thus, Mr. Hameed clearly did not meet with Ahmed's family in Iraq "in or around late 2018," as the motion claims. (Doc. 236 at 1.)

Moreover, far from his travel being close in time to witness statements, as the motion suggests, Mr. Hameed returned to the United States many months before the witness statements cited in his motion. (*See* Extrad. Req. at 00093 (witness statement dated November 18, 2018, some *9 months* after Mr. Hameed returned to the United States), 00060 (witness statement on March 20, 2019, some *13 months* after Mr. Hameed returned

to the United States), 00074-00075 (additional 2019 statements).)[1]  No rational inference can be drawn from Mr. Hameed's travel out of the United States in January and February of 2018 and the timing of these witness statements 9-13 months later.

According to his travel records, the next time Mr. Hameed exited the United States was April 1, 2019 (Ex. 2 at 1), which was *after* the statements on which the motion relies. Thus, Ahmed's family's story about a trip to Iraq in late 2018, involving a supposedly rebuffed extortion demand followed by convincing Iraqi witnesses to frame Ahmed, is contrary to CBP's records of Mr. Hameed's travel into and outside of the United States.

## 2. Many Witness Statements Predate 2018 by Years.

Moreover, while there are some statements of eyewitnesses and plaintiffs in the Extradition Request that were made after the supposed extortion in late 2018, many of the investigative documents in the Extradition Request were created well in advance of that time period. For example, in 2006, the Fallujah Directorate of Police started their investigation into the murder of Khalid Ibrahim Mohammad ("Khalid"). (Extrad. Req. at 00067, 00070, 00082.) In November 2006, one of the eyewitnesses in the Extradition Request, Cooperator 1, identified Ahmed as one of his coconspirators who was involved in Khalid's murder. (*Id.* at 00077-00078, 00080-00081.) In supplemental statements by Cooperator 1 in June 2010, Cooperator 1 again identified Ahmed as one of his coconspirators. (*Id.* at 00079, 00084, 00085.)

There are also statements that predate 2018 in the Extradition Request related to Officer Issam Ahmed Hussein's ("Issam") murder. For example, the plaintiff for Issam's murder—Issam's father—provided a statement to Fallujah Police and the Fallujah Investigative Court in November 2008, naming Ahmed and others based on confessions of co-conspirators. (*Id.* at 00095, 00098.) In January 2009, the eyewitness to Issam's murder who identifies Ahmed at the scene of Issam's murder and as a member of the criminal

---

[1] Attached to the Extradition Complaint on the public docket is a redacted copy of Iraq's Extradition Request. (*See* Docs. 3-3 and 3-4.) Those documents will be cited as "Extrad. Req." followed by the Bates-stamped page numbers found at the middle of the bottom of each page (e.g., EX-NOURI-00001).

- 4 -

group who conducted the murder provided statements to the Office of Counterterrorism and the Fallujah Investigative Court. (*Id.* at 00104-00105.) Based on the eyewitness's statement, it appears that, in 2008 or 2009, the Fallujah Investigative Judge issued arrest warrants for multiple individuals including Ahmed for Issam's murder. (*Id.* at 00111.) In June 2010, Cooperator 1 also provided statements that he had observed Ahmed meeting with his coconspirators at Ahmed's carpentry store and taking part in the plan to kill Issam. (*Id.* at 00106-00110.)

All these statements predate by years, generally about a decade, Mr. Hameed's supposed trip to Iraq in "late 2018" during which, Ahmed's family now alleges, he threatened to (and supposedly did) frame Ahmed. This story does not hold water.

### 3. There is No Evidence Whatsoever in the Motion.

In addition to being contrary to the travel records and the many witness statements identifying Ahmed years ago, his family's story is conspicuous both for its lack of detail and for its lack of any evidentiary support. The motion states, vaguely, that the story was "learned through Mr. Ahmed's family." (Doc. 236 at 1.) Although stating that "an older brother and a nephew . . . declined to pay Hameed" (*id.* at 2), the motion offers no specifics about who supposedly has firsthand knowledge of Mr. Hameed making extortionate statements (if anyone is even claiming to). Much less does it include a declaration, or other actual evidence, to support such a claim.

Rather, the motion merely attaches three undated photographs that ostensibly show Mr. "Hameed with Mr. Ahmed's family." (*Id.*) Such photographs raise no inference of threats to extort or frame someone for murder. Indeed, given that the (undated and otherwise unexplained) photographs show the individuals smiling, playing pool, and posing with children—activities quite inconsistent with extortion and a frame-up for murder—they actually undermine Ahmed's family's story.

Perhaps most importantly, the motion offers no evidence of directions or inducements by Mr. Hameed to plaintiffs or witnesses listed in the Extradition Request. As noted above, the timing of his travel bears no relation to those witness statements.

Ahmed offers nothing but the sheerest of conjecture that Mr. Hameed engaged in any such nefarious activities with witnesses in Iraq.

### 4. The Timing of the Motion is Suspect.

Lastly, the timing of Ahmed's discovery request and motion raises serious questions about the veracity of his family's story. The motion states that his counsel learned of this extortion story on May 2, 2021. (Doc. 236 at 1.)[2] There is no mention of when Ahmed himself claims to have learned of this story. He certainly did not mention it during any of his interviews with the FBI, including his post-*Miranda* interview on January 30, 2020. It is highly improbable that an extortion demand, and threat to frame Ahmed for murder, was really made to his close family members in "late 2018"—more than a year before he was arrested on January 30, 2020—yet that it was never mentioned to him in all that time. And if it was, he surely would have conveyed it to the FBI. The much more likely explanation is that this story is a fabrication.

### B.  The Law Does Not Support Ahmed's Motion.

There is no legal support for Ahmed's broad demand that the United States disclose "any and all evidence in [the prosecution's] possession, custody, or control from any source regarding the involvement of Hameed in the investigation or prosecution of this case." (Doc. 236 at 6.) As the Court has previously recognized, "discovery in an international extradition hearing is limited and lies within the discretion of the magistrate." (Doc. 191 at 2.) In ruling on Ahmed's prior Motion to Compel, the Court correctly rejected similar any-and-all-information-regarding discovery requests by Ahmed. (*Compare* Doc. 180-1 *with* Doc. 191.) Rather, the Court ordered that "the government must disclose exculpatory materials in its possession, whether or not those materials resulted from its 'domestic

---

[2] As discussed at the May 19, 2021, status conference, Ahmed's counsel emailed the United States on May 10, 2021, relaying this information and asserting a similar broad request for discovery as Ahmed seeks in his Motion. Government counsel responded the next day disagreeing with that statement, noting the lack of evidence supporting the family's claim or any specific connection between the information and any of the evidence in the Extradition Request, and inviting Ahmed to file a motion or take any other action giving the timing of the request. At the direction of the Court, that motion was filed on May 20, 2021.

criminal investigation' or other source, that would undercut or obliterate probable cause that Ahmed committed the crimes alleged in the Complaint." (Doc. 191 at 4.)

Mere conflicts in evidence, weaknesses in the prosecuting country's case, and even witness recantations do not undercut or obliterate probable cause. *See, e.g.*, *Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th Cir. 2005) (although the fugitive proffered a second affidavit from the victim in which he claimed not to have identified the fugitive in the original affidavit on which the extradition packet relied, this "did not obliterate India's showing of probable cause, as [the victim's] more recent affidavit constituted conflicting evidence," and "extradition courts do not weigh conflicting evidence" in making probable cause determinations) (internal quotation and brackets omitted); *Man-Seok Choe v. Torres*, 525 F.3d 733, 740 (9th Cir. 2008) ("Ho's lack of credibility is merely a weakness in Korea's case; it does not 'completely obliterate[]' the evidence of probable cause.") (quoting *Barapind*, 400 F.3d at 749).

In *Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016), the Ninth Circuit articulated types of evidence it considers obliterative, such that they may be admissible at an extradition hearing. In doing so, the Ninth Circuit emphasized that in an extradition matter, "the accused does not have the right to introduce evidence in defense because that would require the government seeking his extradition to go into a full trial on the merits in a foreign country." *Id.* at 992. Instead, evidence offered by the fugitive in an extradition matter is only admissible if the evidence is "explanatory" evidence, *i.e.* "evidence that explains matters referred to by the witnesses for the government," as opposed to "contradictory" evidence, which is "evidence for the defense that merely contradicts the testimony for the prosecution." *Id.* The Ninth Circuit identified admissible explanatory evidence as "evidence that explains away or completely obliterates probable cause," but inadmissible contradictory evidence as "evidence that merely controverts the existence of probable cause or raises a defense." *Id.*

For example, the Ninth Circuit concluded that "evidence that a statement was obtained under torture or other coercion constitutes 'explanatory' evidence generally

admissible in an extradition proceeding." *Id.* at 1005. The court warned, however, that the holding was "limited" and "should not be taken as a license to engage in mini-trials on the question of coercion or torture." *Id.* at 1007.[3] Moreover, "the fact that evidence of torture can properly be considered by the extradition court as 'explanatory' evidence does not mean that *all* evidence of torture must be admitted," as "[t]he extradition court still has broad discretion to determine the admissibility of the evidence before it." *Id.*

Here, Ahmed's motion fails to establish that the discovery he seeks meets this high standard. First, as noted above, the vague story told among Ahmed's family, which is untethered to specific persons claiming firsthand knowledge and unsupported by any actual evidence, is at odds with CBP's records about Mr. Hameed's travel, with the fact that Ahmed was identified by witnesses more than a decade earlier, and with common sense. *Supra* Part I.A.[4] It is simply not plausible—and even if it were possible, it would not establish that "any and all evidence . . . regarding the involvement of Hameed in the investigation or prosecution of this case" (Doc. 236 at 6) inherently "explains away or completely obliterates probable cause." *Santos*, 830 F.3d at 992.

Ahmed claims "[e]vidence of the involvement of an individual with a financial motive in the investigation of the case" would be discoverable (Doc. 236 at 5), but the Court has already rightly denied Ahmed's request for "impeachment evidence regarding benefits provided to any person who provided information or statements for use in the Complaint" because "impeachment evidence regarding benefits does not relate to whether

---

[3] Importantly, in *Santos*, the Ninth Circuit analyzed the admissibility of explanatory evidence in the possession of the fugitive and offered by the fugitive for admission at the extradition hearing. 830 F.3d at 990. The Ninth Circuit's guidance in *Santos* did not create any affirmative discovery obligation for the Government to identify and disclose to the fugitive any evidence that could support a theory of torture or coercion such that it might be considered "explanatory."

[4] The motion also curiously asserts that "Ahmed's family has no motive to falsely accuse Hameed" (Doc. 236 at 6), but his family members have an obvious motive to try to protect Ahmed by manufacturing or acceding to such a story. The motion also claims that Ahmed's family members could not have known about Hameed without the allegations being true (*id.*), but it takes little imagination to select a known associate and conjure such vague claims about him. Furthermore, as the motion declines to state who is supposed to have heard this extortion attempt firsthand, family members could simply be passing on rumors and innuendo. They need not necessarily be generating a false story themselves.

probable cause exists that Ahmed committed the crimes alleged" and, "further, impeachment evidence is not admissible at an extradition hearing." (Doc. 191 at 5 (citing *Man-Seak Choe*, 525 F.3d at 740 (affirming denial of discovery relating to witness credibility); *Santos*, 830 F.3d at 993 (fugitive may not impeach government witnesses at extradition hearing)).) In any event, for the reasons laid out, there simply is no tie in Ahmed's motion to the broad disclosures he seeks.

In short, the motion falls well short of credibly establishing that "the statements in the extradition packet are the product of threats and/or bribery" or that "evidence in the extradition packet was improperly obtained." (Doc. 236 at 4-5.) And the motion certainly makes no showing that "any and all evidence . . . regarding the involvement of Hameed in the investigation or prosecution of this case" (*id*. at 6) would be admissible at the hearing to prove such speculative assertions. As with his prior motion's similarly overbroad requests, it should be denied.

**II. THE COURT SHOULD ENTER AN ORDER TAILORED TO EVIDENCE CORROBORATING AHMED'S FAMILY'S STORY THAT WOULD EXPLAIN AWAY OR COMPLETELY OBLITERATE PROBABLE CAUSE.**

There is no reason to revisit the Court's March 31, 2021 discovery order. The Court ordered that "the government must disclose exculpatory materials in its possession, whether or not those materials resulted from its 'domestic criminal investigation' or other source, that would undercut or obliterate probable cause that Ahmed committed the crimes alleged in the Complaint." (Doc. 191 at 4.)

In response to the Court's discovery order, the Government conducted an extensive search for such materials. As part of the Government's search, the Government reviewed materials in its possession for numerous categories of information, including (to pick a few examples): (1) any reference by name to any of the victims, plaintiffs, eyewitnesses, or coconspirators identified in Iraq's Extradition Request, (2) any information about the two specific murders underlying the charged offenses in Iraq's Extradition Request, (3) any information that Ahmed did not commit either of the two charged murders, (4) any information that Ahmed had never been involved in or been a member of Al-Qaeda, and

(5) any information about Ahmed's physical whereabouts around the times of the two charged murders. In the course of those reviews, it uncovered no evidence that would undercut or obliterate probable cause that Ahmed committed the crimes alleged.

Application of the Court's order to this situation is straightforward. If there is evidence of actions by Mr. Hameed "that would undercut or obliterate probable cause that Ahmed committed the crimes alleged in the Complaint," those would be discoverable. (Doc. 191 at 4.) For example, if there were evidence corroborating Ahmed's family's claims, such as evidence that Mr. Hameed took measures to cause false charges to be filed related to the Extradition Request such as by contacting and/or paying bribes to witnesses listed in the Extradition Request to falsely implicate Ahmed in the charged murders, or causing the Government of Iraq to falsely accuse Ahmed for the charges in the Extradition Request, the United States agrees to view that sort of evidence as discoverable under the Court's Order.

The United States is unaware of any such evidence. In fact, the United States has not located in its discovery review to date any involvement by Mr. Hameed with the extradition case, nor has it located evidence that Mr. Hameed spoke to or located any of the Iraqi witnesses listed in the Extradition Request or met with anyone in the Iraqi government about this extradition. However, the Government has not yet had the chance to specifically search all items in its possession referencing Omer Mohammad Hameed with an eye toward evaluating whether any evidence might actually corroborate the statements of Ahmed's family recounted in this discovery request.

Acting in good faith and in an abundance of caution, the United States is willing to conduct a re-review of its files and to search for such material specifically in light of the story presented by Ahmed's family. As discussed at the recent status conference, given the volume of materials to be reviewed, the United States respectfully requests a continuance of approximately 45-60 days to conduct such a review.

### III. CONCLUSION

For the foregoing reasons, Ahmed's motion for an overbroad discovery order is without factual or legal support and should be denied. The United States respectfully asks the Court to enter the attached order appropriately tailored to the kind of evidence about Mr. Hameed (if any exists) that would explain away or completely obliterate probable cause by corroborating Ahmed's family's story. The United States respectfully requests approximately 45-60 days to conduct such a search.

RESPECTFULLY SUBMITTED this 21st day of May, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/ Todd M. Allison*
TODD M. ALLISON
DAVID A. PIMSNER
RACHEL C. HERNANDEZ
Assistant United States Attorneys

REBECCA A. HACISKI
Trial Attorney
Office of International Affairs

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for electronic delivery to counsel of record:

Jami Johnson
Dan Kaplan
*Counsel for Ali Yousif Ahmed Al-Nouri*

*s/ Theresa Hanson*
United States Attorney's Office